454 A.2d 542

COMMONWEALTH of Pennsylvania, Appellee,

v.

Robert PERCELL, Appellant.

Supreme Court of Pennsylvania.

Dec. 31, 1982.

Jack M. Myers, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Eric Henson, Asst. Dist. Attys., for appellee.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

Robert Percell appeals from the order of the Superior Court, Special Transfer Docket,[1] affirming his convictions, after a jury trial, of voluntary manslaughter and possession of an instrument of crime. The charges arose from the January 22, 1975 shooting death of Isaac Bordley.[2] Appellant contends that prosecutorial misconduct in the form of repeated and continuous disregarding of the court's rulings

1. The panel consisted of then-Chief Justice Michael J. Eagen, the Honorable Sydney Hoffman of Superior Court, and the Honorable Warren K. Hess of the Court of Common Pleas of Berks County. Mr. Chief Justice Eagen dissented from the Superior Court's affirmance of judgments of sentence. This Court then granted review.

2. This was Percell's second trial. After his first trial by jury, Percell was convicted of voluntary manslaughter and possession of an instrument of crime. Timely motion for a new trial was granted.

denied him a fair trial. We agree and, thus, reverse and grant a new trial.

## I.

■ The assistant district attorney scorned the trial court's ruling of inadmissibility of prior criminal charges not resulting in conviction on cross examination of a key defense witness. Russell Kolins, a court-appointed investigator, testified that he was a licensed private detective and that, in order to obtain his license, he was subjected to an investigation by the district attorney's office as to his character, integrity and standing in the community. He was called by the defense to testify that, *inter alia,* one prosecution witness who was an off-duty policeman refused to sign a statement identifying appellant as the assailant, and that the district attorney's office pressured another witness to implicate appellant and this witness gave a false statement to the police and lied about his identity.

Prior to this trial, Mr. Kolins had been charged with witness tampering in connection with another trial; this charge did not result in a conviction. Early in the trial, the court ruled evidence of this charge was inadmissible. Despite this ruling, the district attorney subsequently announced her intention to use evidence of this charge to impeach Kolins' credibility, whereupon the court correctly reiterated the inadmissibility of such evidence, *Commonwealth v. Ross,* 434 Pa. 167, 170, 252 A.2d 661, 662 (1969). Despite the court's ruling, the prosecutor asked *five* questions regarding this charge. Although repeated objections were sustained and limiting instructions given, the unavoidable effect of such conduct was to raise in the minds of the jurors the inference that the defense was harboring an unreliable witness—a witness who would suppress the truth and pervert the criminal justice system by tampering with witnesses. This Court has said, "Where counsel persists in intentionally seeking to inject incompetent evidence into the case such misconduct prevents a fair trial and warrants reversal." *Commonwealth v. Ravenell,* 448 Pa. 162, 171, 292

A.2d 365, 370 (1970). Sustaining defense objections and giving limiting instructions were inadequate measures to cure the resulting prejudice to appellant, and the lower court's refusal to grant a mistrial was error.

## II.

Appellant took the stand and, in the course of identifying himself, testified to certain "historical" facts regarding his residence in the neighborhood where the crime occurred, his family and his employment status. Arguing appellant had thus put his character in issue, the prosecutor announced her intention to impeach appellant's "reputation" evidence by prior convictions. These crimes were not crimen falsi and, thus, could not be admissible to impeach appellant's credibility. See *Commonwealth v. Roots,* 482 Pa. 33, 393 A.2d 364 (1978). Because appellant's testimony did not describe his reputation in the community either generally or as it would relate to the crimes presently charged, the lower court ruled evidence of these prior crimes inadmissible. Nevertheless, the prosecutor persevered: "Anything happen to you in 1972 that would prevent you from now and evermore from having a license to carry a gun?" A timely objection was sustained.

Clearly, the prosecutor's question could only have been an improper reference to appellant's prior criminal conviction and to the concomitant statutory sanction of withdrawal of the privilege to register and carry a weapon under 18 Pa.C.S.A. § 6105 which provides: "No person who has been convicted in this Commonwealth or elsewhere of a crime of violence shall own a firearm, or have one in his possession or under his control." Act of December 6, 1972, P.L. 1482, No. 334, § 1. There is no other reasonable inference to be drawn. A reference, either expressly or by reasonable implication, to prior criminal activity, which does not qualify as a recognized exception to the general rule excluding evidence of an accused's prior criminal convictions, *see Commonwealth v. Roots, supra; Commonwealth v. Terrell,* 234 Pa. Super. 325, 339 A.2d 112 (1975), is impermissible. *See Commonwealth v. Penn,* 497 Pa. 231, 439 A.2d 1154, 1160 (1982).

Moreover, the prosecutor persisted, immediately resuming the same line of questioning:

[By the Assistant District Attorney]:

Did you ever apply for a license to carry a gun, Mr. Percell?

A. No, ma'am.

Q. Do you know that under the Criminal Law of Pennsylvania you cannot carry a gun on the street without a license?

A. I didn't know that.

Q. You didn't know that. *And didn't anything occur in 1972 to make you aware of that fact, that on the street you do not and cannot carry a gun without a license?*

A. (No response)

Q. Are you waiting for your attorney to object, sir?

A. No. I'm trying to think. Yeah.

Q. *Something did happen?*

A. Uh huh.

[Defense counsel]: This is objected to, Your Honor.

THE COURT: Objection sustained.

. . . . .

[By the Assistant District Attorney]:

All right. *Without telling us whatever it was that happened to you in 1972,* did you become aware at that time—

[Defense counsel]: This is objected to, Your Honor. That's the third time you have warned her.

THE COURT: I'm telling you, do not refer to previous matters that do not have anything to do with this case.

[Assistant District Attorney]: Your Honor, they're quite relevant and ask to see Your Honor at side bar.

THE COURT: They're not relevant, and I have already ruled.

(Emphasis supplied).

### III.

In addition to the preceding examples, there were other instances at trial where the prosecutor endeavored to

present evidence despite the trial judge's ruling of inadmissibility. More than a year after the events which appellant assigns as error occurred, the judge denied post trial motions characterizing the prosecutor's conduct as spirited but *de minimis* infractions of proper courtroom decorum. It would appear the passage of time between the trial and the disposition of post trial motions has dulled the court's memory, for on the eighth day of trial, the court admonished:

THE COURT: Don't you understand what I'm saying? Now, you're getting very close to being contemptuous by refusing to listen to what I have to say. Now, you're getting awfully close. I'm just warning you. The next step, I'll have Joe Murray over here and I'll have to tell him everything that I have been disappointed in this trial. Now, I'm not threatening you but I hope you'll listen to me, and I don't want—I'm ruling now that there's no mistrial up to this point but I don't know what I will do next.

. . . . .

THE COURT: I want you to confer with Mr. Murray about your attitude here, which I think is getting very dangerous. I don't think you—it's sunk in on you yet, that when I tell you something you don't pay any attention and you somehow have a smile, as if you're the cat that ate the canary and you're going to get this dumb judge next; you'll fool him on this.

[Assistant District Attorney]: That's not the case, Your Honor.

THE COURT: It certainly is and I hope you'll change your attitude because I don't think you think there's any danger at all, and I assure you you're getting in very deep waters now and this is a very serious admonition that I'm giving to you to please be careful about the way that you're handling the case.

More than once the court denied appellant's motion for mistrial on grounds the court believed the assistant district attorney to be acting out of either ignorance of proper trial procedures or failure to understand the court's rulings.

Close review of the record, however, convinces us the prosecutor did understand the court's rulings but, contending the court had misapplied applicable case law, she chose to ignore the trial judge's rulings and try the case her way. Such misconduct by an officer of the court cannot be tolerated.[3]

This was appellant's second trial, and it lasted four weeks. After closing arguments, defense counsel again requested a mistrial and the court, understandably reluctant to abandon the fruits of four long, arduous weeks and begin anew, denied the request apparently on the theory the jury might return a verdict untainted by the prosecutor's conduct, stating, "[A]ny motions for mistrial are denied. It's ready to go to the jury and we don't know what they're going to do and some of these matters might be subject to post trial motions if we ever get to that stage."

We are convinced that the trial court's indulgence with the prosecutor has cost appellant a fair trial. The prosecutor's overly zealous efforts in representing the Commonwealth amounted to intentional misconduct marked by defiant disregard for the law and permeated the trial with an atmosphere of contempt for the court's rulings. Thus, the court's rulings and cautionary instructions were inadequate to cure any resulting prejudice inuring to appellant as the result of the prosecutor's conduct. Therefore, appellant's request[4] for a new trial is granted.

Reversed and remanded for a new trial.

McDERMOTT, J., files a dissenting opinion.

3. "It is unprofessional conduct for a prosecutor knowingly and for the purpose of bringing inadmissible matter to the attention of the judge or jury to offer inadmissible evidence, ask legally objectionable questions, or make other impermissible comments or arguments in the presence of the judge or jury." ABA Standards for the Prosecution and Defense Function, Standard 3–5.6(b), approved February 12, 1979.

4. Appellant has raised no double jeopardy claim, thus, we express no view as to whether appellant should be discharged.

McDERMOTT, Justice, dissenting.

The majority orders what will be the defendant's third trial for this offense. To do so they examined two instances of alleged prosecutorial misconduct.

The first instance is that the District Attorney attempted to impeach a witness by the use of a prior arrest not resulting in a conviction. The witness, one Russell Kolins, was a private investigator who was offered to show inconsistent statements made by various witnesses for the Commonwealth. Kolins is a practiced, experienced witness, and the district attorney was indeed anxious to persuade the trial court that his arrest for "witness tampering" was a relevant issue. The trial judge carefully examined the question in the context of the witness' testimony as to his experience and his statement that he had received his license, after an investigation by the District Attorney's office. The trial judge, in camera, foreclosed the use of the arrest for impeachment purposes. The majority speaks as though the jury heard that the witness was once charged with witness tampering.

. . . . the unavoidable effect of such conduct was to raise in the minds of the jurors the inference that the defense was harboring an unreliable witness—a witness who would suppress the truth and pervert the criminal justice system by tampering with witnesses.

*See,* Opinion, Flaherty, J., at 3.

*The jury never heard that the witness was so charged.* Neither the words "witness tampering" nor any recognizable inference was ever put before the jury.

The second ground offered by the majority is that the district attorney attempted to impeach the defendant by using a prior conviction not crimen falsi, to wit, that the defendant had a prior conviction for carrying a gun. The trial judge ruled the prior conviction inappropriate and prejudicial. It is true that the district attorney attempted to circumvent that ruling and objections were sustained. The circumvention, however, did not incorporate or specifically indicate a prior conviction. The issue, however, quickly

evaporated when the defendant said he did not know it was unlawful to carry a gun. At that juncture his prior conviction established at least his prior knowledge that carrying a gun is illegal. Notwithstanding, the careful trial judge sustained objections even to questions that might inferentially expose that conviction. Again the jury had no direct knowledge of his previous conviction.

The learned trial judge, who carefully, patiently and skillfully sat through four weeks of spirited trial was of the opinion that these and other occasions were de minimus. To read the over three thousand pages of testimony, replete with the care and patience Judge Geisz exercised, leaves no doubt that this defendant received a fair trial and was convicted by overwhelming credible evidence. To suggest that the passage of time dulled the trial judge's memory of the texture and fabric of that trial is an arch gratutity. To make his careful admonitions to counsel, admonitions that he never conceived as subjected to scornful disobedience, a basis for a new trial, is to my mind unsupportable and accordingly I dissent.