J-S23003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DANNY KEITH KIRTLEY, | |
| Appellant | No. 113  WDA 2018 |

Appeal from the PCRA Order Entered December 19, 2017
In the Court of Common Pleas of Washington County
Criminal Division at No(s): CP-63-CR-0000462-2011

BEFORE:  BENDER, P.J.E., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED  JUNE 12, 2019**

Appellant, Danny Keith Kirtley, appeals from the post-conviction court's December 19, 2017 order denying his timely-filed petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Appellant raises three claims of ineffective assistance of counsel (IAC).  After careful review, we affirm.

In February of 2011, Appellant was arrested and charged with single counts of criminal homicide, 18 Pa.C.S. § 2501(a), voluntary manslaughter (unreasonable belief), 18 Pa.C.S. § 2503(b), and simple assault, 18 Pa.C.S. § 2701(a).  He was also charged with two counts of aggravated assault under

---

[*] Retired Senior Judge assigned to the Superior Court.

18 Pa.C.S. §§ 2702(a)(1) and 2702(a)(4). The PCRA court summarized the pertinent evidence that was presented at Appellant's jury trial, as follows:

This case arises from the fatal shooting of Trevor Compton (hereinafter "Victim") by [Appellant] on February 10, 2011. The shooting occurred at the work place of [Appellant] and the Victim[,] located in North Strabane Township, Washington County. The employer, David "Matt" Rosenboom, owner of Rosenboom Welding and Angel Logistics and primary supervisor of the Victim and [Appellant], testified that his employee roster in February of 2011 consisted of the Victim, [Appellant], Chris Goss, Roy Moll, and Richard Smith. All of Mr. Rosenboom's "employees" were treated as independent contractors.

Roy Moll, a co-worker of the Victim and [Appellant] at the time, testified that the [V]ictim was often called "Pork Chop" or "Casey." Mr. Moll explained that on the night before the incident, he was in the shop working, along with [Appellant] and Ryan Smith, when he heard a loud noise outside. He went outside with [Appellant] who proceeded to go to his truck and return with a handgun saying, "That's why I carry this." The source of the loud noise was never found, but Mr. Moll did hear the Victim and [Appellant] arguing in the shop that night about the amount of work [Appellant] had left to finish. Mr. Moll testified that he had helped [Appellant] finish his work that night before leaving.

Matt Rosenboom testified that [Appellant] called him the night before the incident and told him that the other workers were "lazy and worthless" and would not help him finish his work. After the call with [Appellant] concluded, Mr. Rosenboom called supervisor Chris Goss [and told him] to send [Appellant] to a job near the West Virginia border the next day in order to keep the employees separated in an effort to quell the tension. The next day, the day of the incident in question, the decision was made by Mr. Rosenboom to fire [Appellant], after receiving a complaint from the customer at the site where [Appellant] was working. Mr. Rosenboom called Chris Goss and told him that [Appellant] was to be fired when he turned his time sheet in that day, and that he would be willing to fire [Appellant] over the phone if Mr. Goss did not want to do it in person.

Chris Goss, supervisor [of] the Victim and [Appellant] at the time of the shooting, testified that on February 10, 2011, he sent

[Appellant] to work at a gas rig near the West Virginia border after speaking with Mr. Rosenboom over the phone. He told [Appellant] to make sure to collect his field tickets and turn in his timesheet that day, Thursday, as the workers were paid on Friday and Mr. Goss had to fly home to Mississippi the next day.

At approximately 4:00 p.m. on Thursday, Mr. Moll went outside to try to start his diesel pickup truck[,] which had been giving him trouble due to the cold weather. While in the parking lot, he observed [Appellant] sitting in his truck. Mr. Moll came back into the shop and struck up a conversation with the Victim when he saw [Appellant] come in the shop and walk towards Chris Goss. Mr. Moll proceeded to ask [Appellant] about the "shit he was talking," to which [Appellant] responded by walking within arms-reach of him and saying, "that's right, I said it and I'll say it again." At this time, [Appellant] took a swing at Mr. Moll, but the punch did not connect. Mr. Moll responded with a punch of his own, which did connect with [Appellant's] head, sending him to the ground. [Appellant] proceeded to grab Mr. Moll's right leg and would not let go so Mr. Moll started "beating him on his head and trying to get him off." Mr. Moll hit [Appellant] with both hands for approximately twenty (20) seconds[,] at which time [Appellant] let go. Mr. Moll testified that he was the only person hitting [Appellant].

Mr. Goss testified that he was inside the shop welding a set of metal stairs that afternoon when he heard a vehicle pull up outside. He continued welding until he heard a commotion inside the shop, and upon finishing his weld and raising his welding shield, he saw [Appellant] and Roy Moll fighting. He walked towards the two men while yelling at them to stop. He witnessed [Appellant] on his knees slipping in some water on the floor, while at the same time observing Roy Moll run out the door.

[Appellant], upon letting go of Mr. Moll's leg, stumbled backward, rolled on the ground, and began to stand up while reaching into his pants or pocket. Mr. Moll testified that upon seeing this reaching motion, he ran out of a nearby door into the parking lot. Mr. Moll testified that he went to his truck so that he would have something between himself and [Appellant] if [Appellant] produced a firearm. While in his truck, he heard a loud "pop" sound inside the shop, which he recognized as a gunshot, and called 911. Chris Goss exited the shop within seconds of the gunshot sound and exclaimed, "Call 911, he just shot Pork Chop!" to which Mr. Moll replied, "I'm calling!"

The Victim was taken by ambulance to Canonsburg Hospital due to the immediate need for care, while [Appellant] was taken by medical helicopter to Allegheny General Hospital (AGH) in Pittsburgh. Officer Christopher Wilson of the North Strabane Township Police Department accompanied [Appellant] on this helicopter trip. At the hospital, Officer Wilson requested that [Appellant's] hands not be washed to preserve any gunshot residue (GSR) and that his clothing be seized. While at the hospital, [Appellant] told Officer Wilson that the whole incident was over his boss, Matt Rosenboom, not paying him for trips and [Appellant] wanting to quit. The Victim later died of his gunshot wound at the hospital.

PCRA Court Opinion (PCO), 7/9/18, at 1-5 (footnotes and citations to the record omitted). At trial, Appellant testified that he shot the Victim in self-defense.

Based on this evidence, the jury acquitted Appellant of the homicide and simple assault charges, but convicted him of voluntary manslaughter (unreasonable belief) and the two counts of aggravated assault. On November 28, 2012, the court sentenced Appellant to an aggregate term of 7 to 20 years' incarceration. This Court affirmed Appellant's judgment of sentence on November 7, 2014. *See Commonwealth v. Kirtley*, 113 A.3d 344 (Pa. Super. 2014) (unpublished memorandum). He did not file a petition for allowance of appeal with our Supreme Court.

On April 6, 2015, Appellant filed a timely PCRA petition and the court appointed counsel to represent him. After a change in counsel and several requests for extensions of time, counsel filed an amended petition on March 20, 2017. The Commonwealth subsequently filed an answer to the petition. On October 2, 2017, the PCRA court issued a Pa.R.Crim.P. 907 notice of its

- 4 -

intent to dismiss Appellant's petition without a hearing, to which Appellant filed a timely response. However, on December 19, 2017, the court issued an order dismissing Appellant's petition.

Appellant filed a timely notice of appeal, and he also timely complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, he presents three claims for our review:

1. Whether prior counsel was ineffective for failing to present testimony during a suppression hearing to show Appellant did not knowingly and intelligently waive his *Miranda*[1] rights?

2. Whether prior counsel was ineffective by not objecting to the Commonwealth's implication that [A]ppellant used his right to discovery to present false testimony and/or by not advancing the argument on appeal?

3. Whether prior counsel at trial was ineffective by not objecting to the Commonwealth's attempt to convince the jury that [A]ppellant should have fired or was required to fire a warning shot or otherwise provide [the Victim] with some advance notice that he was going to shoot?

Appellant's Brief at 6.

Initially, we note that "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Morales*, 701 A.2d 516, 520 (Pa. 1997) (citing *Commonwealth v. Travaglia*, 661 A.2d 352, 356 n.4 (Pa.

---

[1] *Miranda v. Arizona*, 86 S.Ct. 1602 (1966).

1995)). Where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has directed that the following standards apply:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [**Commonwealth v.**] **Colavita**, 606 Pa. [1,] 21, 993 A.2d [874,] 886 [(Pa. 2010)] (citing **Strickland**[ **v. Washington**, 104 S.Ct. 2053 (1984)]). In Pennsylvania, we have refined the **Strickland** performance and prejudice test into a three-part inquiry. **See** [**Commonwealth v.**] **Pierce**, [515 Pa. 153, 527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. **Commonwealth v. Ali**, 608 Pa. 71, 86, 10 A.3d 282, 291 (2010). "If a petitioner fails to prove any of these prongs, his claim fails." **Commonwealth v. Simpson**, [620] Pa. [60, 73], 66 A.3d 253, 260 (2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. **See Ali, supra**. Where matters of strategy and tactics are concerned, "[a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **Colavita**, 606 Pa. at 21, 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." **Commonwealth v. King**, 618 Pa. 405, 57 A.3d 607, 613 (2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the

proceeding.'" ***Ali****,* 608 Pa. at 86–87, 10 A.3d at 291 (quoting ***Commonwealth v. Collins****,* 598 Pa. 397, 957 A.2d 237, 244 (2008) (citing ***Strickland****,* 466 U.S. at 694, 104 S.Ct. 2052)).

***Commonwealth v. Spotz****,* 84 A.3d 294, 311-12 (Pa. 2014).

In this case, Appellant first contends that his trial counsel acted ineffectively by not calling an expert to the stand at the hearing on Appellant's pretrial motion to suppress a statement he made to police officers at the hospital. More specifically, Appellant argues that expert testimony would have demonstrated that he did not knowingly, voluntarily, and intelligently waive his ***Miranda*** rights prior to making that statement. Instead of calling an expert witness, trial counsel "did not present any evidence at the hearing of the suppression motion." Appellant's Brief at 23. In regard to prejudice, Appellant cursorily claims that, "[h]ad [counsel] presented the evidence by the expert witnesses[,] Appellant would not have been found guilty." ***Id.***

In rejecting this claim, the PCRA court reasoned, *inter alia*, that Appellant had made no "attempt to identify an expert witness who would [have] offer[ed] testimony on behalf of [Appellant]." PCO at 13. We agree that Appellant's omission in this regard defeats his ineffectiveness claim. Our Supreme Court has "noted the well-settled rule that, in addition to the ineffectiveness test, when a defendant claims that expert testimony should have been introduced at trial, the defendant must articulate what evidence was available ***and identify the witness who was willing to offer such evidence***." ***Commonwealth v. Bryant****,* 855 A.2d 726, 745 (Pa. 2004) (cleaned up; emphasis added). Here, Appellant fails to identify any expert

witness that trial counsel could have called at the suppression hearing. He also does not explain what testimony an expert would have given to demonstrate that his *Miranda* waiver was involuntary, unknowing, or unintelligent.

Next, Appellant argues that his trial counsel acted ineffectively by not appropriately objecting to the following portion of the Commonwealth's cross-examination of Appellant at trial:

> [The Commonwealth:] [Appellant], you are here today after hearing over 20 witnesses testify, and now you're telling us what happened; isn't that true?
>
> [Appellant:] That's correct.
>
> [The Commonwealth:] And you had all these months to review the investigative materials as well; isn't that true?
>
> [Appellant:] That's correct.
>
> [The Commonwealth:] You thought about those investigative materials; isn't that true?
>
> [Defense Counsel:] Objection.
>
> ***
>
> [The Court:] What's wrong with the question?
>
> [Defense Counsel:] What he is asking him, he has had months to look at the investigative reports. I don't know how that's relevant.
>
> [The Commonwealth:] Because he can create a story and spin his yarn from what he's heard in this courtroom and all the months that he's had to review the investigative reports.
>
> [Defense Counsel:] I made my objection.
>
> [The Court:] Denied. … [Appellant], would you return to the witness chair?

[The Commonwealth:] You have had months to review those reports and think about it; haven't you?

[Appellant:] I have thought about this every day for [the] 19 months that I've sat in jail.

[The Commonwealth:] And now, today, you say something that you never said in all those opportunities with the police and with the physicians, now you say it?

N.T. Trial, 9/17/12, at 763-64.[2]

In support of his argument that this cross-examination was improper, Appellant relies on *Commonwealth v. Bricker*, 487 A.2d 346 (Pa. 1985). There, the prosecutor argued in closing that the defendant had received "complete discovery" early on in the case and had used that information to concoct a "fabricated story" to refute the charges against him. *Id.* at 354. Our Supreme Court found that "these remarks violate[d] the rules … that a prosecutor must limit statements to facts in evidence and reasonable inferences therefrom and must not express personal opinions on guilt, credibility, or strategy." *Id.*

In this case, Appellant offers no developed discussion of how *Bricker* is similar to the present matter. Instead, aside from repeating the above-quoted portion of *Bricker*, Appellant's entire argument is as follows:

By allowing the line of questioning[,] Appellant[']s credibility as to what happened at the time of the shooting was inferred by the prosecution to be a lie and fabricated from the viewing of the investigative file. The proper objection was never launched by

_____

[2] There are two transcripts in the certified record for September 17, 2012, one of which has pages numbered 728 through 832, and the other pages 1271-1327. We will utilize the transcript referred to in Appellant's brief (numbered 728 through 832).

[trial counsel] and therefore established prejudice for [] Appellant which was evidence in the jury's verdict. The result of the trial would have been different had the proper objection been asserted and Appellant would not have been found guilty.

Appellant's Brief at 26.

Appellant has failed to establish that his case is akin to **Bricker**. The at-issue remarks by the Commonwealth in this case were questions posed to Appellant on cross-examination, not closing arguments that were unsupported by "facts in evidence," as in **Bricker**. **Bricker**, 487 A.2d at 354. Moreover, in **Bricker**, the prosecutor outright argued that the defendant had utilized his right to discovery to fabricate his defense to the charges, thus expressing a personal opinion that Bricker was incredible. By contrast, here, the Commonwealth utilized cross-examination questioning to raise an inference that Appellant had fabricated his story after spending months thinking about the case, reviewing the investigative files, and listening to the evidence presented against him at trial. Therefore, the prosecutor did not express a personal opinion regarding Appellant's credibility, nor present an argument that was not supported by facts in evidence. Accordingly, Appellant's cursory argument has not established error in the PCRA court's conclusion that "[a] clear distinction can be drawn between the remarks made by the prosecutor in **Bricker** and the cross[-]examination pursued by the Commonwealth in this case." PCO at 16.

Additionally, in finding that Appellant failed to meet the prejudice prong of the ineffectiveness test, the PCRA court reasoned that,

> even if the questions at issue could be considered inappropriate, these statements were not of such gravity to unduly inflame the passions of the jury. The line of questioning at issue was innocuous in light of all of the other evidence of [Appellant's] guilt. Thus, the [PCRA] court submits that, even if the line of questioning at issue could be considered prosecutorial misconduct, it was harmless, and the exclusion of such statements from the record would not have altered the outcome of the proceeding. Due to [a] lack of prejudice, the third prong of the *Pierce* test is not met and the claim fails.

*Id.* at 18. Again, Appellant offers no challenge to the PCRA court's rationale, nor any meaningful counter-argument that he was prejudiced by the admission of the at-issue portion of the Commonwealth's cross-examination. Instead, his entire prejudice argument is the following: "The result of the trial would have been different had the proper objection been asserted and Appellant would not have been found guilty." Appellant's Brief at 26. This single sentence is insufficient to establish prejudice.

In Appellant's third and final ineffectiveness claim, he argues that his counsel erred by not objecting to the following portion of the Commonwealth's cross-examination of him:

> [The Commonwealth:] Did you fire a warning shot?
>
> [Appellant:] No, I did not.
>
> [The Commonwealth:] Did you say stop or I'll shoot?
>
> [Appellant:] I couldn't say anything with both of them hitting and kicking me.

N.T. Trial, 9/17/12, at 772. Appellant also avers that counsel should have objected during closing arguments, when the Commonwealth stated: "By [Appellant's] own admission today, when he was talking about that shot, it

- 11 -

was only one. No warning shot, no warning at all…." N.T. Trial, 9/17/12, at 22. Appellant insists that these questions and argument by the Commonwealth should have been objected to by trial counsel because they improperly suggested to the jury "that a warning shot [is] required when someone act[s] in self[-] defense before [they may] apply[] force to preserve their own life." Appellant's Brief at 28.

In finding this ineffectiveness claim meritless, the PCRA court reasoned:

> [Appellant] argues that the aforementioned [testimony and argument by the Commonwealth] placed an additional burden on [Appellant] in proving self-defense. While there is no question that self-defense does not require a showing that [Appellant] fired a warning shot or gave advanced notice, the [PCRA] court disagrees that the line of questioning and closing remarks at issue were tantamount to argument by the Commonwealth that such warnings were legally required. [Appellant] was claiming self-defense. It is appropriate for the Commonwealth to question [Appellant] regarding his actions prior to the shooting, the level of threat perceived by [Appellant], and the necessity of deadly force:
>
>> By way of background, a claim of self-defense (or justification, to use the term employed in the Crimes Code) requires evidence establishing three elements: "(a) [that the defendant] reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the [defendant] did not violate any duty to retreat."
>
> ***Commonwealth v. Mouzon***, 53 A.3d 738, 740 (Pa. 2012).
>
> The Commonwealth sustains that burden of negation "if it proves any, of the following: that the slayer was not free from fault in provoking or continuing the difficulty which resulted in the slaying; that the slayer did not reasonably believe that [he] was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save [him]self therefrom; or that the

- 12 -

slayer violated a duty to retreat or avoid the danger."
***Commonwealth v. Burns***, 416 A.2d 506, 507 ([Pa.] 1980).

As indicated above, the Commonwealth has the burden of disproving self-defense. The line of questioning initiated by the Commonwealth was reasonable to establish [Appellant's] state of mind at the time of the shooting. Furthermore, [Appellant] fails to offer any case law in support of his argument.

In addition, if the questions and remarks by the Commonwealth did seem to imply some form of additional requirement for self-defense, any such implication would be refuted by the jury instructions. The trial court issued the following lengthy jury instruction:

> THE COURT: And now, ladies and gentlemen, I'll give you the charge regarding justification, that is, use of deadly force in self-defense.
>
> In general, [Appellant] has raised the issue of whether he acted in self-defense when he shot and killed Trevor Compton. Self-defense is called justification in the law of Pennsylvania. If [Appellant's] actions were justified, you cannot find him guilty beyond a reasonable doubt. The issue having been raised, it is the Commonwealth's burden to prove beyond a reasonable doubt that [Appellant] did not act in justifiable self-defense.
>
> When the issue is raised as to use of deadly force, the first matter that you must consider in deciding whether the Commonwealth has met its burden in this regard is what kind of force [Appellant] used in this instance. There are two kinds, deadly and non-deadly. The Commonwealth claims here that deadly force was used by [Appellant] and it must prove that claim beyond a reasonable doubt.
>
> \*\*\*
>
> Now, these are the rules for justification when deadly force was used. If the Commonwealth proves to you beyond a reasonable doubt that [Appellant] used deadly force, then to prove that such force was not justifiable in this case, it must prove all the following elements beyond a reasonable doubt:

- 13 -

First, that [Appellant] did not reasonably believe that he was in immediate danger of death or serious bodily injury from Trevor Compton at the time he used the force and that, therefore, his belief that it was necessary for him to use deadly force to protect himself was unreasonable.

Put another way, the Commonwealth must prove either:

That [Appellant] did not actually believe he was in danger of death or serious bodily injury such that he needed to use deadly force to defend himself at that moment; or [t]hat while [Appellant] actually believed he needed to use such force, his belief was unreasonable in light of all the circumstances known to him.

Keep in mind, a person is justified in using deadly force against another not only when they are in actual danger of unlawful attack but also when they mistakenly, but reasonably, believe that they are.

A person is entitled to estimate the necessity for the force he employs under the circumstances as he reasonably believes them to be at the time. In the heat of conflict, a person who has been attacked ordinarily has neither time nor composure to evaluate carefully the danger and make nice judgments about how much force is needed to protect himself. Consider the realities of the situation faced by [Appellant] here when you assess whether the Commonwealth proved beyond a reasonable doubt that either he did not believe he was actually in danger of death or serious bodily injury to the extent that he needed to use such force in self-defense or that, while he did believe that, his belief was unreasonable; or that, in the same encounter with Trevor Compton, [Appellant] engaged in conduct that demonstrated his intent to cause death or serious bodily injury, and by that conduct, he provoked the use of force against him.

The conduct by [Appellant] must be of such a nature that it shows it was his conscious object to cause death or serious bodily injury to Trevor Compton. Conduct that is not of such a nature does not constitute the kind of provocation upon which [the] Commonwealth may rely to prove its case.

If you find beyond a reasonable doubt that [Appellant's] acts were of such a nature, you must then ask whether it

- 14 -

provoked the similar use of force against him. In this assessment, the conduct by [Appellant] may be the initial provocation of the fight, or it may be an act that continues or escalates it.

However, even if [Appellant] was the initial aggressor or was the person who escalated the incident to one involving the use of deadly force, if he thereafter withdraws in good faith, making it clear that his further intentions are peaceable, and the alleged victim pursues him and renews the fight, he does not forfeit his right to claim justifiable self-defense.

If, on the other hand, you find beyond a reasonable doubt that [Appellant] provoked the use of force against him by engaging in conduct that showed that he intended to cause death or serious bodily injury to the alleged victim, you may find that his conduct was not justified, or that [Appellant] knew that he could avoid the use of deadly force with complete safety by retreating but that he failed to do so.

If an encounter takes place in [Appellant's] place of work, he has no duty to retreat unless he was the initial aggressor or he was attacked by another person who [Appellant] knows to also work there.

If the Commonwealth proves one of these elements beyond a reasonable doubt, the actions of [Appellant] in using deadly force are not justified. If the Commonwealth fails to prove one of these elements beyond a reasonable doubt, [Appellant's] action was justified, and you must find him not guilty of the crime of [m]urder of the [third] [d]egree.[3]

This lengthy jury instruction set forth all the necessary elements of self-defense, thereby curing any possible prejudice to [Appellant]. Thus, the [PCRA] court finds that the line of questioning pursued by the Commonwealth was fair for cross-examination. The lack of merit to this claim causes [Appellant's] ineffectiveness claim to fail under the first prong of the *Pierce* test.

_____

[3] The Commonwealth apparently classified Appellant's homicide charge as murder of the third degree.

PCO at 19-22 (footnotes omitted).

As with his other issues, Appellant fails to offer any meaningful counter-argument to the PCRA court's reasons for concluding that his ineffectiveness claim is meritless. Especially troubling is Appellant's failure to address the court's determination that he suffered no prejudice given the lengthy instruction on self-defense, in which the court informed the jury of the elements of that defense, and that it was the Commonwealth's burden to disprove it. Instead of acknowledging this instruction, Appellant again offers a single sentence stating simply, without any elaboration, that he "would not have been found guilty" had counsel objected to the at-issue questions and argument by the Commonwealth. Appellant's Brief at 28. Given the record before us and Appellant's cursory arguments herein, we discern no error in the PCRA court's conclusion that he failed to prove the arguable merit and/or prejudice prongs of the ineffectiveness test.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/12/2019

- 16 -