J. S28015/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| CHRISTOPHER BAROSH, | : | No. 1103 EDA 2013 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, February 11, 2013,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0008461-2010

BEFORE:  FORD ELLIOTT, P.J.E., LAZARUS AND PLATT,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:  **FILED OCTOBER 07, 2014**

Christopher Barosh set fire to a home owned by his girlfriend just before an insurance policy taken out for the property was about to be cancelled.  Following a jury trial in the Court of Common Pleas of Philadelphia, appellant was convicted of arson, endangering persons, and insurance fraud.[1]  Following careful review, we affirm.

The facts and procedural history of this case are as follows.  In July of 2005, appellant purchased a home at 1148 South 54th Street in Philadelphia on behalf of his girlfriend, Jill Wezorek.[2]  On the deed to the property,

---

* Retired Senior Judge assigned to the Superior Court.

[1] Appellant was found not guilty of conspiracy.

[2] We note that Wezorek's name is misspelled in the notes of testimony.

Wezorek was listed as the buyer and appellant was listed as possessing a power of attorney to act on her behalf. In addition, appellant's name and signature appeared on a tax document with the deed.

On September 9, 2005, appellant, again acting as Wezorek's agent, submitted a "Deluxe Plus" homeowners insurance policy application with Allstate Insurance Company regarding the aforementioned property. The policy had coverage limits of $126,533 for the dwelling, $12,653 for other structures, and $94,000 for personal property. (Notes of testimony, 12/5/12 at 16-17.) In order to obtain this policy, the property was to be occupied by the owner, and the home must be under 45 years old. (*Id.* at 17.) Additionally, appellant needed to provide proof of insurance from July 2005 to September 2005, the date of the application. The application submitted indicated the property was purchased in September 2005 and would be owner occupied.

Despite the insurance policy's requirement that the premises be owner-occupied, appellant rented the house to Yolanda Dingle, who planned to live there with five children. (*Id.* at 17-18, 29-30.) Appellant had agreed to make certain renovations to the house to accommodate Ms. Dingle's sick child, and he took $2,000 from Ms. Dingle to cover the costs. (*Id.* at 29.) Appellant, however, did not make any of the promised renovations, and Ms. Dingle filed a police report. (*Id.* at 31.)

Approximately a month after she moved into the 1148 South 54th Street property, appellant forcefully evicted Ms. Dingle. Ms. Dingle testified that as she was putting her key into the front door, appellant approached her from behind, grabbed the key, went inside by himself, and locked her out. (*Id.* at 33.) She was not able to remove her personal property from the house. (*Id.* at 34.)

On September 16, 2005, Allstate, having discovered several reasons why the house did not qualify for the Deluxe Plus Policy,[3] sent Wezorek a letter notifying her that the insurance policy would be cancelled effective October 27, 2005. (*Id.* at 19.) Appellant did not deny receiving the letter; rather, he claimed he thought the cancellation had already taken effect at the time he read the letter.

At approximately 11:00 p.m. on October 25, 2005, approximately 25 hours before the homeowner's policy was to be cancelled, the house was set on fire. Doris House, who lived directly next door at 1150 South 54th Street, heard her fire alarm go off and noticed a lot of smoke coming from the wall of her residence shared with 1148 South 54th Street. (*Id.* at 55-57.) Ms. House lived with her son, her 11-year-old nephew, and 2 grandchildren who were approximately 4 and 5 years old. (*Id.* at 55-56.) Ms. House woke the children and got them out of the home to safety.

---

[3] Specifically, the house was not owner occupied, was purchased in July of 2005 as opposed to September 2005, and was over 45 years old.

Ms. House then contacted Ms. Dingle. Ms. House testified that there was smoke damage to her home and personal items, and she no longer is able to live in the home. (*Id.* at 60.)

Ms. Dingle testified that she received a phone call from a neighbor, Ms. House,[4] who informed her of the fire, knowing her belongings were inside. (*Id.* at 35.) Upon arrival, Ms. Dingle met with Ms. House, who was "screaming and hollering." (*Id.* at 36.) Ms. House told her that she saw appellant coming from the back of the house when the fire started. (*Id.* at 37.) Ms. Dingle testified that she observed appellant across the street in the window of Richard Wilson's residence, watching the fire and laughing with Wilson. (*Id.* at 38-39.)

Lieutenant Bordes Ramseur of the Philadelphia Fire Department, an expert in the area of determining the causes and origin of fires, investigated this matter. He determined that the fire had been intentionally set in the basement area and that an ignitable liquid had been used. Louis Gahagan, a private fire investigator hired by Allstate, also testified as an expert who subsequently conducted his own investigation and reached the same conclusion; a fire began in the basement, was incendiary, and an ignitable fluid was used to accelerate the fire. (Notes of testimony, 12/6/12 at 13-16, 20, 43, 55-58.)

---

[4] Ms. House died before trial. (*Id.* at 37.)

After the fire, appellant made two separate admissions of guilt. Appellant and his brother, Bryan Barosh ("Bryan"), were having an argument about a property in New Hope Pennsylvania, and appellant threatened to burn the New Hope house down "like the house he burnt down in Philadelphia." (*Id.* at 72.) Bryan further testified that appellant stated he would "take a wet 2 by 4 and jam it in a light socket until it sparked a flame . . . or use a flammable liquid or kerosene gas, whatever you use to remove paint or wallpaper from a house." (*Id.* at 73.) Appellant also attempted to pay David Tarmin, an acquaintance and former tenant at another property, to provide him an alibi for the arson. During that conversation, appellant admitted to Mr. Tarmin that he had set fire to the house in order to collect the insurance proceeds. (*Id.* at 91.)

Appellant testified that he left 1148 South 54th Street between 6:00 p.m. and 6:30 p.m. and went to watch a baseball game near the University of Pennsylvania. (*Id.* at 40-41.) Upon his return, he thought the residence appeared "odd looking" and was confused and did not know what to do. (*Id.* at 43.) Appellant left and stayed overnight in a nearby hotel. Appellant also stated that Dingle was a squatter and he had to have her evicted. (*Id.* at 35-36.) He also denied laughing with Wilson at the time of the fire. (*Id.* at 47.) In fact, he stated that he did not get along with Wilson and would not be in his company. Appellant averred that House mistrusted

him and believed he wanted to steal houses in the neighborhood. (*Id.* at 48.)

A jury trial was held and on December 11, 2012, appellant was convicted of arson and insurance fraud. At the February 11, 2013 sentencing hearing, the trial court read into the record a letter he received from appellant's brother describing how appellant had offered him money not to appear at trial and, when that failed, threatened to kill him. (Notes of testimony, 2/11/13 at 22-23.) The Honorable Chris R. Wogan sentenced appellant to consecutive sentences of 6½ to 19 years' imprisonment for arson and 6 months to 3 years for insurance fraud. Additionally, he ordered appellant to pay restitution for the damage caused by the fire.

On February 18, 2013, appellant filed a post-sentence motion seeking reconsideration of his sentence; the motion was denied after a hearing on March 15, 2013. On April 2, 2013, a timely notice of appeal was filed. On April 11, 2013, the trial court ordered appellant to file a concise statement of errors complained of on appeal within 21 days pursuant to Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A. A Rule 1925(b) statement was filed on September 16, 2013, following an extension of time that was granted.

I.   Is the evidence sufficient to sustain appellant's guilt of arson and insurance fraud?

II.  Are the verdicts of guilt against the weight of the evidence?

III. Did the pretrial court err when it denied a motion to dismiss and/or sanction as a result

of the destruction of evidence and the Commonwealth's failure to establish a chain of custody?

IV. Did the trial court err when it allowed testimony showing that appellant was involved in a "scam" of Commonwealth witness Yolanda Dingle?

V. Did the trial court err when it allowed hearsay testimony?

VI. Did the trial court err when it did not allow testimony concerning civil proceedings appellant was involved in with Commonwealth witness David Tarmin?

VII. Did the trial court err when it allowed cross-examination of appellant to establish that he evicted "people that don't have much and are in dire circumstances"?

VIII. Did the trial court err when it allowed cross-examination of appellant concerning his alleged failure to present documentary evidence and witnesses?

IX. Is the trial court's sentence of 6½ to 19 years for arson excessive, unreasonable and not supported by appellant's character, history and condition?

X. Is the trial court's imposition of restitution excessive and not supported by the evidentiary record?

Appellant's brief at 5-6.

First, we address appellant's sufficiency claim.

In determining sufficiency of the evidence, the Court must review the evidence admitted at trial, along with any reasonable inferences that may be drawn from that evidence, in the light most favorable to the

> verdict winner. ***Commonwealth v. Kimbrough***, 872 A.2d 1244, 1248 (Pa.Super. 2005), ***appeal denied***, 585 Pa. 687, 887 A.2d 1240 (2005). A conviction will be upheld if after review we find that the jury could have found every element of the crime beyond a reasonable doubt. ***Commonwealth v. Bullick***, 830 A.2d 998, 1000 (Pa.Super. 2003). The court may not weigh the evidence or substitute its judgment for that of the fact-finder. ***Commonwealth v. DiStefano***, 782 A.2d 574, 582 (Pa.Super. 2001), ***appeal denied***, 569 Pa. 716, 806 A.2d 858 (2002). "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Commonwealth v. Sheppard***, 837 A.2d 555, 557 (Pa.Super. 2003).

***Commonwealth v. Judd***, 897 A.2d 1224, 1233-1234 (Pa.Super. 2006), ***appeal denied***, 912 A.2d 1291 (Pa. 2006).

Appellant claims that the Commonwealth's evidence failed to establish appellant's identity as the perpetrator of the crimes. (Appellant's brief at 28.) Appellant also avers that the Commonwealth failed to prove that "the fire was incendiary by nature." (***Id.*** at 29.) Finally, while he acknowledges the Commonwealth need not prove motive, he avers that he had no motive to commit the crimes, as he would not have benefitted from an insurance claim since he did not own the property. (***Id.*** at 30.)

In order to sustain a conviction for arson, the Commonwealth must have established beyond a reasonable doubt that the defendant intentionally set a fire on his own property or that of another, which recklessly placed another person in danger of death or bodily injury. 18 Pa.C.S.A.

§ 3301(a)(1)(i).  It is well established that a conviction for arson may be based solely on circumstantial evidence.  ***Commonwealth v. Trafford***, 459 A.2d 373 (Pa.Super. 1983).

Insurance fraud can be committed in several ways, including:

[k]nowingly and with the intent to defraud any insurer or self-insured, presents or causes to be presented to any insurer or self-insured any statement forming a part of, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim.

18 Pa.C.S.A. § 4117(a)(2).

Clearly, the evidence was sufficient to establish that appellant intentionally set fire to the house.  The Commonwealth presented evidence that the fire was set 25 hours before the insurance policy, that appellant had fraudulently obtained, was about to expire.  Two different experts testified that pursuant to their investigations, the fire was set intentionally and that a liquid accelerant was used.  Testimony was presented that a neighbor saw appellant coming from the area where the fire was started.  Moreover, two witnesses testified that appellant admitted to intentionally setting the fire; one witness was threatened by appellant if he testified, while the other was offered a bribe to testify falsely about appellant's whereabouts on the night of the fire.  Uncontroverted evidence that the fire seriously damaged the house next door, which was occupied by several people, established that individuals were placed in danger of death or serious bodily injury.

As appellant states, the Commonwealth had no obligation to prove motive for committing the arson. However, testimony presented contributed insight that burning down the property would result in his girlfriend being paid $126,553 from the insurance company. Appellant's intention to damage or destroy the property by fire would result in his benefit, directly or indirectly, by receiving funds from Ms. Wezorek.

The Commonwealth also established that appellant made several false, misleading, or incomplete statements to Allstate concerning material facts. Testimony established that appellant falsely claimed the house was purchased in September rather than July of 2005; Allstate would not have covered the property had it known it had been uninsured for three months. Appellant also falsely claimed that the house was less than 45 years old, which was necessary to obtain the enhanced benefits of the "deluxe plus" policy. Appellant also falsely claimed that the property was owner occupied, yet another requirement for obtaining the preferred policy. Moreover, appellant's acquaintance, Mr. Tarmin, testified that appellant admitted to setting the fire in order to collect money from the insurance company. These facts are sufficient to establish that appellant committed the crime of insurance fraud.

While appellant provided contradictory testimony, the jury resolved all conflicts in favor of the Commonwealth. We find that appellant's convictions were supported by sufficient evidence.

Next, appellant argues that his convictions are against the weight of the evidence. We find appellant's claim is waived. Appellant merely reasserts the argument he set forth in support of his sufficiency claim: the Commonwealth failed to prove "any of the essential elements of the crimes charged beyond a reasonable doubt." (Appellant's brief at 31.) Under settled precedent, defendant's repetition of his meritless challenge to the sufficiency of the evidence cannot establish an abuse of discretion in the trial court's denial of his challenge to the weight of the evidence. *Commonwealth v. Sullivan*, 864 A.2d 1246, 1248-1249 (Pa.Super. 2004). Indeed, "[a] weight-of-the-evidence claim concedes that the evidence is sufficient to sustain the verdict." *Commonwealth v. Lyons*, 79 A.3d 1053, 1067 (Pa. 2013). Nor does appellant provide any relevant authority for us to decide his weight of the evidence claims. As a result, we find all of appellant's weight of the evidence claims waived. *See* Pa.R.A.P. 2119. *See also Commonwealth v. Mercado*, 649 A.2d 946, 954 (Pa.Super. 1994) (stating that failure to provide support for an issue may result in waiver of the claim).

The third issue presented is whether appellant is entitled to a new trial as a result of a pre-trial ruling, which permitted Mr. Gahagan, the private fire investigator retained by Allstate, to testify as to samples recovered from the crime scene. Specifically, appellant argues that this testimony should be excluded as Mr. Gahagan's company destroyed those samples in the

ordinary course of business, and the Commonwealth failed to establish a chain of custody. (Appellant's brief at 35-36.) We find no error with either the trial court's decision or rationale. Following careful review, we affirm this issue based upon the trial court's November 12, 2013 opinion. (Trial court opinion, 11/12/13 at 15-18.)

The fourth claim presents a challenge to the trial court's exercise of discretion in admitting Ms. Dingle's testimony characterizing his conduct toward her as a "scam." Again, Ms. Dingle testified that she paid appellant $2,000 for rent and renovations regarding the property, that she was later removed from the property, and that it was a "scam." (Notes of testimony, 12/5/12 at 27, 44.) On appeal, appellant claims that Ms. Dingle's reference to his actions was prejudicial as it amounts to "character assassination." (Appellant's brief at 42.) Following review, we find that the trial court acted within its discretion in overruling appellant's objection to Ms. Dingle's perception of appellant's conduct.

Evidence of other crimes or prior bad acts is generally inadmissible except "in certain circumstances where the evidence is relevant for some other legitimate purpose and not merely to prejudice the defendant by showing him to be a person of bad character." ***Commonwealth v. Lark***, 543 A.2d 491, 497 (Pa. 1988). Such evidentiary issues are within the sound discretion of the trial court. ***Commonwealth v. Banks***, 521 A.2d 1 (Pa. 1987), ***cert. denied***, 484 U.S. 873 (1987).

Ms. Dingle never referenced a specific conviction or an arrest; rather, she merely characterized her perception of appellant's conduct in taking her money and not performing the promised renovations as well as forcefully evicting her before setting the fire. Defense counsel cross-examined Ms. Dingle about the "scam," her anger towards appellant, and her report to the mayor's office and the police. (Notes of testimony 12/5/12 at 42-53.) Certainly, the evidence of appellant's interactions with Ms. Dingle was probative as part of the natural history of this case. Moreover, any possible error in overruling appellant's objection could not have caused appellant such prejudice as to justify a new trial. We agree with the Commonwealth that the use of the word "scam" was a minor event in this jury trial from December 5 to 11, 2012, and there is not a reasonable probability that the verdict would have been different but for this noun. Moreover, the Commonwealth presented overwhelming evidence of appellant's guilt.

Appellant's fifth issue avers that the trial court abused its discretion in admitting four instances of supposed hearsay: (1) Ms. Dingle's testimony concerning unidentified individuals telling her to stop paying appellant rent or other money; (2) Ms. Dingle's testimony concerning statements of Ms. House as to appellant's whereabouts at the time of the trial; (3) Ms. Dingle's testimony concerning statements of Ms. House that appellant started the fire; and (4) Bryan's testimony concerning a statement made to him by appellant as to his setting fire to the properties.

(Appellant's brief at 45.)  We have carefully reviewed the briefs, the relevant law, the record, and the opinion authored by the Honorable Chris R. Wogan. We find that Judge Wogan's opinion correctly disposes of the issues presented, and accordingly, we affirm based on the trial court's opinion. (***See*** trial court opinion, 11/12/13 at 20-25.)

Appellant next argues that he is entitled to a new trial "as a result of the ruling of the trial court that precluded him from presenting testimony concerning civil proceedings he was involved in with the Commonwealth witness David Tarmin."  (Appellant's brief at 51.)  As the trial court and the Commonwealth observe, this claim is belied by the record.  (Trial court opinion, 11/12/13 at 26; Commonwealth brief at 36.)  The trial court did not prohibit evidence of the existence of a civil proceeding involving appellant and Mr. Tarmin; rather, the court prohibited evidence of the result of that proceeding.  (Notes of testimony, 12/7/12 at 54-55.)

In his brief on appeal, appellant now claims that he did not misinterpret the trial court's ruling.  Rather, the heart of his argument is that the trial court did not specifically explain to the jury that it could consider the fact that there had been a civil proceeding.  Appellant baldly claims, "the manner in which the trial court sustained the Commonwealth's objection and instructed the jury caused the jury to ignore the testimony as to the civil proceedings in their entirety, not just the results."  (Appellant's brief at 53.)

The trial court instructed the jury as follows: "the jury will disregard any comment <u>about the results</u> in the civil proceedings." (Notes of testimony 12/7/12 at 54-55 (emphasis added).) This prompt instruction, to which appellant did not object and for which he did not request further clarification, was clear and concise. Appellant cannot now belatedly complain that the court should have given the jury a special instruction. *See* Pa.R.A.P. 302(a). A new trial is not warranted since the jury is presumed to follow the court's instructions. *See Commonwealth v. Baker*, 614 A.2d 663, 672 (Pa. 1992) (our law presumes that juries follow the court's instructions as to the applicable law).

We now turn to appellant's seventh claim: "[d]id the trial court err when it allowed cross-examination of appellant to establish that he evicted 'people that don't have much and are in dire circumstances'?" (Appellant's brief at 54.) In his brief, he claims the Commonwealth engaged in a character assassination when it questioned him regarding his eviction of Dingle, Tarmin, and Barosh. "The Commonwealth sought to imply that appellant had a character trait for taking advantage of people." (*Id.*) No relief is due.

The scope of cross-examination is a matter within the trial court's discretion and will not be disturbed by this court absent an abuse of that discretion. *Commonwealth v. Hoover*, 16 A.3d 1148, 1150 (Pa.Super. 2011). An abuse of discretion is not a mere error in judgment but, rather,

involves bias, ill-will, partiality, prejudice, manifest unreasonableness, or misapplication of law. *Id.*

Pa.R.E. 611 governs the mode and order of interrogation and presentation and provides, in relevant part, as follows:

> **(b)  Scope of cross-examination.**  Cross-examination of a witness other than a party in a civil case should be limited to the subject matter of the direct examination and matters affecting credibility; however, the court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

Pa.R.E. 611(b).  Our courts have broadly defined the scope of cross-examination to include "inferences, deductions, or conclusions which may be drawn therefrom, which explain or destroy the effect of the direct testimony." *Commonwealth v. Snoke*, 580 A.2d 295, 300 (Pa. 1990).

Appellant claims that his testimony did not amount to character testimony; rather, he avers that his "testimony was merely a narration of his relationship with Dingle, Tarmin, his brothers and other people. . . .  At no time did appellant claim he was non-violent, law abiding or peaceful, the usual character traits upon which character testimony is offered." (Appellant's brief at 55-56.)  We disagree; character testimony takes many forms and is certainly not limited to a list of "usual traits."  *See Commonwealth v. Luther*, 463 A.2d 1073, 1077 (Pa.Super. 1983) (it has long been the law in Pennsylvania that an individual on trial is permitted to introduce evidence of his good reputation in any respect which has "proper

relation to the subject matter" of the charge at issue). Evidence of character can be of a witness' report of reputation within a relevant community, a witness' opinion based on personal observation, or evidence of instances of conduct that reflect on the actor's character. By contrast, if a defendant merely testifies to historical facts and does not describe his or her reputation, defendant will not have put general character in issue. *Commonwealth v. Percell*, 454 A.2d 542, 544 (Pa. 1982).

The record herein reveals that appellant testified to his reasons for evicting Ms. Dingle and Mr. Tarmin, and his testimony described several admirable character traits he believed that were generally known about him in the community. We cannot find that the trial court abused its discretion in permitting the Commonwealth to cross-examine appellant concerning his testimony as to the circumstances of evicting Ms. Dingle and Mr. Tarmin or his reputation, as he essentially testified as a character witness on his own behalf. The cross-examination of appellant was limited to the same traits appellant testified he possessed. Appellant is not entitled to a new trial pursuant to this theory of relief.

The eighth claim, that the trial court erred when it allowed cross-examination of appellant concerning his alleged failure to present documentary evidence and witnesses, is also meritless. (Appellant's brief at 57.)

Appellant testified that he was at a bar during the time of the fire and that he withdrew money from an ATM to give to a man who performed work for him. The Commonwealth questioned appellant about his inability to produce the ATM receipt or the man whom appellant claimed he paid. Appellant also testified that he was not in Wilson's home the night of the fire, and the Commonwealth questioned him about his inability to produce Wilson to corroborate his testimony. Finally, appellant testified to Wezorek's purchase of 1148 South 54th Street as well as her intentions with regard to the property. On cross-examination, the Commonwealth questioned him about his inability to produce Wezorek as a witness. Appellant claims the Commonwealth's cross-examination amounted to "burden shifting." (*Id.*) We disagree.

We can quickly dispose of this meritless issue. Simply put, appellant opened the door to questions regarding the existence of a witness to corroborate his alibi. *See Commonwealth v. Hawkins*, 701 A.2d 492, 510 (Pa. 1997) (prosecutor's comments were in response to defense counsel's statement that she was going to prove that someone other than the appellant committed the murder; the court found that this "opened the door" to the subject); *Commonwealth v. Yarris*, 549 A.2d 513, 526 (Pa. 1988), *cert. denied*, 491 U.S. 910 (1989) (prosecutor's inquiry as to why defendant's good friend, with whom defendant testified he allegedly spent the day of the murder, did not testify did not impermissibly shift burden of

- 18 -

proof to defendant). ***See also Commonwealth v. Ford***, 650 A.2d 433, 442 (Pa. 1994) (defendant's prior criminal record is not admissible as evidence, but if defendant opens an evidentiary door concerning his past criminal record, then Commonwealth is allowed to cross-examine on that issue).

In addition, the trial court properly instructed the jury "it is not the defendant's burden to prove he is not guilty" and that "([t]he person accused of a crime is not required to present evidence or prove anything in his own defense." (Notes of testimony, 12/10/11 at 40-42.) Thus, any possibility the jury might have misinterpreted the prosecutor's proper summation would have been eliminated by the instruction. ***Hawkins***, ***supra*** at 511 (possible prejudicial effect of prosecutorial remark allegedly implying that appellant bore burden of proof was cured by trial court's general instruction that Commonwealth always bore the burden of proof; jury is presumed to have followed court's instruction).

The ninth claim challenges the trial court's exercise of discretion in imposing what appellant characterizes as an excessive sentence for arson;[5] this issue presents a challenge to the discretionary aspects of his sentence. ***See Commonwealth v. Boyer***, 856 A.2d 149 (Pa.Super. 2004).

---

[5] Appellant does not challenge his sentence for insurance fraud.

"It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal." ***Commonwealth v. Mastromarino***, 2 A.3d 581, 585 (Pa.Super. 2010).

> Before we reach the merits of this [issue], we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. The third and fourth of these requirements arise because Appellant's attack on his sentence is not an appeal as of right. Rather, he must petition this Court, in his concise statement of reasons, to grant consideration of his appeal on the grounds that there is a substantial question. Finally, if the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

***Commonwealth v. Malovich***, 903 A.2d 1247, 1250 (Pa.Super. 2006) (citations omitted).

In the instant case, appellant filed a timely notice of appeal, preserved his claim in his timely post-sentence motion,[6] and included in his appellate brief a separate Rule 2119(f) statement. Thus, we proceed to determine whether appellant has presented a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. ***See Mastromarino***, ***supra***.

---

[6] Appellant also presented the issue in his court-ordered Pa.R.A.P. 1925(b) statement.

Appellant contends that his sentence of 6½ to 19 years' incarceration for arson, an upward departure from the guidelines, is unreasonable and excessive as it does not take into consideration his history and character. Appellant also avers that the court failed to provide adequate reasons for the sentence. He also posits that the trial court placed undue emphasis on the nature of the crime committed. This court has held that a claim the trial court focused solely on the nature of the offense, without considering the protection of the public or the rehabilitative needs of the appellant, as is required by 42 Pa.C.S.A. § 9721(b), presents a substantial question. ***Commonwealth v. Riggs***, 63 A.3d 780, 786 (Pa.Super. 2012); ***Commonwealth v. Hyland***, 875 A.2d 1175, 1183 (Pa.Super. 2005) (indicating substantial question raised when issue raises question of whether trial court sentenced in aggravated range without considering mitigating circumstances); ***Commonwealth v. Monahan***, 860 A.2d 180, 181 (Pa.Super. 2004) (a claim that the sentencing court failed to place sufficient reasons on the record for deviating upwards from the guidelines presents a substantial question). Thus, we shall proceed to an examination of the merits of appellant's discretionary aspect of sentencing claim.

Our standard of review is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its

> discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

*Commonwealth v. Clarke*, 70 A.3d 1281, 1287 (Pa.Super. 2013), *appeal denied*, 85 A.3d 481 (Pa. 2014).

More specifically, 42 Pa.C.S.A. § 9721(b) offers the following guidance to the trial court's sentencing determination:

> [T]he sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

*Commonwealth v. Bricker*, 41 A.3d 872, 875 (Pa.Super. 2012) (quotation omitted). Thus, under 42 Pa.C.S.A. § 9721(b), a "sentencing court must formulate a sentence individualized to that particular case and that particular defendant." *Boyer*, 856 A.2d at 153.

We affirm appellant's ninth issue based upon our independent review of the record, and the trial court's November 12, 2013 opinion. (Trial court opinion, 11/12/13 at 31-36.) The record reflects due consideration of the appropriate sentencing factors, and that appellant's sentence did not constitute an abuse of discretion.

The final issue presented claims the trial court's imposition of restitution was excessive and was not supported by the evidentiary record. After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court, it is our

determination that there is no merit to this question raised on appeal.  Once again, we affirm on the basis of the trial court's well-reasoned opinion.  (***Id.*** at 36-38.)

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/2014

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA ⋮

                  ⋮    CP-51-CR-0008461-2010

                  ⋮

                  ⋮

          v.          ⋮

                  ⋮    SUPERIOR COURT
                  ⋮    1103 EDA 2013

CHRISTOPHER BAROSH        ⋮

                  ⋮

**FILED**

NOV 1 2 2013

Criminal Appeals Unit
First Judicial District of PA

O P I N I O N

CHRIS R. WOGAN, J.

Procedural Posture

After a jury trial on December 5 – 11, 2012, before this court, the defendant was found guilty on CP-51-CR-0008461-2010 of Arson Endangering Persons 18 PA. CONS. STAT. §3301(A)(1)(I) and Insurance Fraud 18 PA. CONS. STAT. §4117(A)(3), and not guilty of Criminal Conspiracy 18 PA. CONS. STAT. §903(A)(1).[1] On February 11, 2013 this court sentenced the defendant to an above the guideline sentence of 6 ½ to 19 years incarceration for the crime of arson, and to a guideline sentence of 6 to 36 months incarceration for the crime of insurance fraud. The court ordered these two sentences to run consecutive to one another In addition, the court ordered the defendant to pay restitution as follows: $5,000 civil penalty payable to the insurance fraud

---

[1] Defendant was represented by Theodore Martin Kravitz, Esquire at trial.

1

The Commonwealth's presentation of Yolanda Dingle's testimony showing that the defendant was involved in a "scam" was not inappropriate, unfairly prejudicial, and did not deny the defendant a fair trial. Therefore, the defendant is not entitled to a new trial.

Ms. Dingle testified that she paid the defendant $2,000 for rent and renovations relating to 1148 South 54th Street, that she was later removed from the property, and that it was a scam. N.T. 12/5/12 p. 27-41. The testimony regarding a "scam" is relevant to both the defendant's character and the issue of whether or not Ms. Dingle was legally living in 1148 South 54th Street. Pa.R.E. 401, 404. More specifically, Ms. Dingle's testimony is admissible character evidence of the defendant's motive, opportunity, intent, preparation, and/or plan regarding the arson of 1148 South 54th Street. Pa.R.E. 404(b).

In addition, the testimony was properly admitted because its probative value was not outweighed by any unfair prejudice to the defendant. Pa.R.E. 403. Defense counsel was afforded the opportunity to cross-examine the witness regarding the alleged "scam."

Furthermore, it would not be possible for the defendant to be charged with a "scam" as a "scam" does not rise to the level of a specific crime, nor is a "scam" listed in the Pennsylvania statute on crimes and offenses. *See generally* Title 18 Pa. Cons.

19

STAT. Thus, any such admission could not be considered as unfairly prejudicial.

D. Defendant's fifth claim is: "The defendant is entitled to a new trial as a result of the ruling of the trial court that allowed the Commonwealth to present hearsay testimony (citations omitted). The offending testimony was as follows:

a. Yolanda Dingle's testimony concerning an unidentified individual telling her to stop paying the defendant rent or any other money. (N.T. 12/5/12 p. 32, 44, 47).
b. Yolanda Dingle's testimony concerning statements of Madeline House (dec.) as to the defendant's whereabouts at the time of the fire. (N.T. 12/5/12 p. 35).
c. Yolanda Dingle's testimony concerning statements of Madeline House (dec.) that the defendant started the fire. (N.T. 12/5/12 p. 36-37).
d. Bryan Barosh's testimony concerning statements made to him by the defendant as to his setting fire to properties." (N.T. 12/6/12 p. 72-73).

In support of these arguments, defendant claims: "These out-of-court statements were offered to prove the truth of the matter asserted and were not admissible under any exception to the hearsay prohibition. As a result of the trial court's ruling, the defendant was denied a fair trial."

Regarding defendant's alleged hearsay claims in "(a)" above, Ms. Dingle's testimony "concerning an unidentified individual telling her to stop paying the defendant rent or any other money" is not hearsay. This testimony does not fall under the definition of hearsay as an out-of-court statement offered for the truth of the matter asserted as the testimony does not constitute an assertion. Rather, Ms. Dingle's testimony relates to instructions or warnings she received from another individual

20

to stop paying the defendant (emphasis added). *See* Pa.R.E. 801, *Comment* ("Communications that are not assertions are not hearsay. These would include questions, greetings, expressions of gratitude, exclamations, offers, instructions, warnings, etc.").

In addition, if the testimony were considered an assertion, and therefore inadmissible hearsay, the trial court's error in allowing its admittance during trial merely rises to the level of a harmless error. *See United States v. Lopez*, 340 F.3d 169, 177 (3d Cir. 2003) (stating that while determining whether error in allowing inadmissible hearsay in a criminal trial was harmless, "The dispositive question...is whether the improperly admitted statements may have helped to 'cement[ ] the government's case by adding an invisible, presumably disinterested witness' to corroborate the government's position."). Ms. Dingle's testimony that another individual warning her to stop paying the defendant did not help the Commonwealth "cement" its case of arson and insurance fraud against the defendant, and therefore did not result in the defendant being denied a fair trial.

Regarding the defendant's alleged hearsay claims in "(b)" and "(c)" above, Ms. Dingle's testimony about statements Madeline House made to her as to the defendant's whereabouts at the time of the fire and that the defendant started the fire

21

fall under the excited utterance exception to the hearsay rule, and were properly admitted by the trial court.

The testimony the defendant claims is inadmissible hearsay is as follows:

[Ms. Dingle]: Why did I run to the house? Because she called and said my stuff was on fire and she told me they set the house on fire.

[Commonwealth]: Who said that to you?
...
[Ms. Dingle]: Madeline House, she told me where he at.
...
[Commonwealth]: Did you see Madeline House on that night?

[Ms. Dingle]: Yes

[Commonwealth]: And when did you first see Madeline House?
...
[Ms. Dingle]: Ms. House's doorway.

[Commonwealth]: Which would be the property next door?

[Ms. Dingle]: Yes.

[Commonwealth]: Okay. And what was her demeanor at that time? ... How was she acting? ... Was she calm?

[Ms. Dingle]: No. She was hyper, scared and upset...[s]he was screaming and hollering.

[Commonwealth]: And at that time, did she make a statement as to what she had seen?

[Ms. Dingle]: Yes...[s]he said Mr. Chris came from the back of the house and the fire started.

[Commonwealth]: She said she saw Mr. Barosh come out from where the fire started?

[Ms. Dingle]: Yes.

N.T. 12/5/12 p. 35-37.

As the Pennsylvania Rules of Evidence state "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused" is an exception to the rule against hearsay. Pa.R.E. 803(2). The "startling event" causing Ms. House's statements to Ms. Dingle was the fire immediately next door to her house. Ms. House being "hyper, scared and upset...screaming and hollering" clearly indicates she was under the stress of excitement caused by the fire. Therefore, the excited utterance exception applies to these statements that Ms. Dingle testified Ms. House made to her, and their admittance did not result in the defendant being denied a fair trial.[2]

Lastly, regarding the defendant's alleged hearsay claims in "(d)" above, Bryan Barosh's testimony "concerning statements made to him by the defendant as to his setting fire to properties" fall under the opposing party statement exception to the hearsay rule, and were properly admitted by the trial court.

---

[2] See Pa.R.E. 803(2), Comment (T[he excited utterance] exception...requires an event or condition that is startling. [A[n excited utterance (1) need not describe or explain the startling event or condition; it need only relate to it, and (2) need not be made contemporaneously with, or immediately after, the startling event. It is sufficient if the stress of excitement created by the startling event or condition persists as a substantial factor in provoking the utterance. There is no set time interval following a startling event or condition after which an utterance relating to it will be ineligible for exception to the hearsay rule as an excited utterance.).

As the Pennsylvania Rules of Evidence state "[a] statement...offered against an opposing party and...was made by the party in an individual...capacity" is an exception to the rule against hearsay. Pa.R.E. 803(25)(A). The defendant made three statements to Bryan Barosh that the defendant claims are hearsay: one threatening to burn down the witness's house; one referencing a house the defendant burned down in Philadelphia; and one whereby the defendant explained in detail how he would start a fire.[3] Even though the first of these statements arguably constitutes an actual admission to the Commonwealth's current charge of arson, none of the statements need to be an actual admission. Rather, all statements sufficiently fall under the exception to hearsay rule because they were made by the defendant in an individual capacity and are being offered against him. See Pa.R.E. 803(25), Comment (stating both the Federal and Pennsylvania Rules of Evidence previously called this exception to the hearsay rule "admission," however, subsequently changed the rule's name to "statements" as to more accurately describe the rule's usage by the courts). Therefore,

---

[3] The statements made by Bryan Barosh as to what the defendant told him were as follows:

[Bryan Barosh]: He said he'd burn this fucking place down if I don't give him the keys...he'd burn it down like the house he burnt down in Philadelphia...he'd take a wet 2 by 4 in and ham it in a light socket until it sparked a flame. Or use a flammable liquid or kerosene gas, whatever you use to remove paint or wallpaper from the house." N.T. 12/6/13 p. 72-73.

the statement by an opposing party exception applies to these statements that Bryan Barosh testified the defendant made to him, and their admittance did not result in the defendant being denied a fair trial.

F. Defendant's sixth claim is: "The defendant is entitled to a new trial as a result of the ruling of the trial court that precluded him from presenting testimony concerning civil proceedings he was involved in with Commonwealth witness David Tarmin. (N.T. 12/7/12 p. 54-55). This ruling prohibited the defendant from exhibiting Tarmin's bias and motivation to testify falsely. As a result of the trial court's ruling, the defendant was denied a fair trial."

The trial court's ruling regarding presentation of testimony concerning civil proceedings involving the defendant and Commonwealth witness David Tarmin did not prohibit the defendant from exhibiting Mr. Tarmin's bias and motivation to falsely testify. Therefore, the defendant was not denied a fair trial as a result of the trial court's ruling, and is not entitled to a new trial.

During the direct examination of the defendant, the Commonwealth objected to the defendant's testimony "Yes, I took [removing Mr. Tarmin from the property] in front of a judge and he ruled in our favor and I had discussions with Mr. Tarmin after the court date." The trial court sustained the Commonwealth's objection specifically stating "The jury will disregard any comment about the results in civil proceedings."

25

(emphasis added). However, the jury was not instructed to disregard that Mr. Tarmin and the defendant were adversaries in a civil proceeding. N.T. 12/7/12 p. 54-55.

The defendant's argument that the trial court's ruling prohibited the defendant from exhibiting Mr. Tarmin's bias and motivation to falsely testify is a misinterpretation and/or mischaracterization of the trial court's ruling. The trial court only sustained part of the Commonwealth's objection relating to the results of the civil proceeding. The trial court did not sustain the Commonwealth's entire objection as to the introduction of any and all evidence of the civil proceeding concerning the defendant and Mr. Tarmin. The defendant was still able to successfully introduce evidence of the law suit and impeach Mr. Tarmin as to his potential bias and motivation to falsely testify. Therefore, the defendant was not denied a fair trial as a result of the trial court's ruling, and is not entitled to a new trial.

G. Defendant's seventh claim is: "The defendant is entitled to a new trial as a result of the trial court's ruling that allowed the Commonwealth to cross-examine him to establish that he evicted 'people that don't have much and are in dire circumstances.' (N.T. 12/7/12 p. 72-73, 95). Evidence of the defendant's eviction of tenants or "squatters" and their circumstances was not relevant to any issue at trial. This cross-examination was prejudicial and denied the defendant a fair trial."

The Commonwealth's cross-examination of the defendant regarding his eviction of people from their homes was relevant to the trial, did not result in unfair prejudice, and did not deny the defendant a fair trial. Therefore, the defendant is not entitled to a new trial.

Under the Pennsylvania Rules of Evidence, if the defendant first offers evidence of a relevant character trait of the defendant, the Commonwealth may offer evidence to rebut this character trait. Pa.R.E. 404(a)(2)(A).

On direct examination the defendant offered evidence as to his character for what can generally be described as being a generous and charitable individual who offered to help those in need. Specifically, the defendant testified to the following: being employed as a handyman, he helped owners take care of their properties; regarding Ms. Dingle being thrown out of her home and needing a place to stay, the defendant offered to facilitate the process for her to obtain a lease agreement to rent 1148 South 54th Street and stated "everybody knows, I'm usually the guy who will give the shirt off my back to somebody"; that he worked with drug rehabilitation centers to give part-time work to individuals who cannot obtain work; that he agreed to help Mr. Tarmin when he was losing his house by taking ownership of the house, paying off back taxes, cleaning up the house, and specifically stated "I signed for him, I gave

him a place to live, I gave him a job, too"; and regarding a confrontation with his brother Bryan Barosh, the defendant said "I'm not a very confrontational person, I'm pretty passive." N.T. 12/7/12 p. 24-25, 36, 52-57.

In rebuttal to the defendant's introduction of this character evidence, the Commonwealth cross-examined the defendant as to his eviction of Ms. Dingle, Mr. Tarmin, and the defendant's brother Bryan Barosh. The Commonwealth's introduction of this evidence clearly rebuts the defendant's testimony that he is a charitable person willing to give "the shirt off his back" to these people. Instead the Commonwealth implied through its cross-examination that the defendant has a character trait for taking advantage of people. Because the defendant opened the door to his alleged good character, the Commonwealth's introduction of rebuttal evidence falls clearly within the relevance parameters set by the Pennsylvania Rules of Evidence. This evidence was relevant to issues raised by the defendant at trial, did not result in unfair prejudice, and did not deny the defendant a fair trial.

H. Defendant's eighth claim is: "The defendant is entitled to a new trial as a result of the trial court's ruling that allowed the Commonwealth to cross-examine him concerning his alleged failure to present documentary evidence and witnesses. (N.T. 12/7/12 p. 77-81, 86-91). This cross-examination improperly placed a burden on the defendant to present documentary evidence and witnesses thereby shifting the burden of proof and

production to him. As a result of the trial court's ruling, the defendant was denied a fair trial."

The Commonwealth's cross-examination of the defendant concerning his alleged failure to present documentary evidence and witnesses did not shift the burden of proof and production to the defendant. Therefore, the defendant was not denied a fair trial.

Courts have held that a prosecutor cross-examining a defendant as to his failure to produce evidence does not improperly shift the burden of proof to the defendant so long as the questioning does not infringe on the defendant's right to not testify, and the jury is properly instructed. *United States v. Roux*, 715 F.3d 1019, 1031 (7th Cir. 2013). Proper jury instructions require the court to inform the jury that the Commonwealth has the burden of proving its case and that the defendant has no burden to present any evidence. *Id*. *See id*. ("when the defendant elects to testify on his own behalf, the government, within reason, may through its questions and argument properly bring to the jury's attention the extent to which his version of events is uncorroborated and rests on his own credibility"); *United States v. Glover*, 479 F.3d 511, 520 (7th Cir. 2007)("If the evidence at issue does not implicate a defendant's right against self-incrimination, and the jury has been properly instructed as to the burden of proof, a prosecutor

may comment on a defendant's failure to present evidence contradicting the government's proof at trial."). *See also* Pa R.E. 611, *Comment* ("When the accused in a criminal case is the witness, there is an interplay between the limited scope of cross-examination and the accused's privilege against self-incrimination. When the accused testifies generally as to facts tending to negate or raise doubts about the prosecution's evidence, he or she has waived the privilege and may not use it to prevent the prosecution from bringing out on cross-examination every circumstance related to those facts.").

The defendant voluntarily chose to testify during trial. While on cross-examination, the Commonwealth questioned the defendant about a lack of corroborating witnesses and documentary evidence.[4] The Commonwealth's cross-examination clearly did not infringe upon the defendant's right against self-incrimination as the defendant waived this right by

---

[4] The alleged improper cross-examination by the Commonwealth relates to questioning regarding the following: the defendant testified he was at a bar during the time of the fire, during which he went to an ATM to take out money to give to a man who performed work for the defendant, after which the Commonwealth questioned the defendant about his inability to produce the ATM receipt or the man whom the defendant gave the money (N.T. 12/10/12 p. 74-79); the defendant testified that he was not in Richard Wilson's home the night of the fire contrary to prior witnesses' testimony, after which the Commonwealth questioned the defendant about his inability to produce Mr. Wilson to corroborate this testimony (*Id.* at p. 46-47, 86-87); the defendant testified to Ms. Wezorek's purchase of 1148 South 54th Street as well as her intentions with the property, after which the Commonwealth questioned the defendant about his inability to produce her as a witness to corroborate his testimony (*Id.* at p. 87-90).

voluntarily taking the stand. In addition, the trial court properly instructed the jury that the defendant does not have to prove his innocence, that the defendant does not have to introduce any evidence or prove any defense, and that the Commonwealth has to prove its case beyond a reasonable doubt. N.T. 12/10/12 p. 40-41. Therefore, the Commonwealth's cross-examination of the defendant concerning his alleged failure to present documentary evidence and witnesses did not shift the burden of proof and production to the defendant, and he was not denied a fair trial.

I. Defendant's ninth claim is: "The defendant is entitled to a remand for resentencing since the trial court's sentence of 6/12 to 19 years for arson is excessive, unreasonable and not supported by the defendant's character, history and condition. The sentence imposed is outside of the aggravated range of the Sentencing Guidelines. The trial court failed to state a sufficient basis for imposing a sentence outside of the aggravated range of the Sentencing Guidelines. The defendant had no prior criminal history, was employed, was well-education and had substantial community support. These factors were either ignored or not given sufficient weight in imposing sentence. The sentence imposed was based on inappropriate factors such as the defendant's demeanor (citations omitted)."

The defendant is not entitled to a remand for resentencing for the 6 ½ to 19 year incarceration sentence for arson imposed by the trial court on February 11, 2013. The 6 ½ to 19 year incarceration sentence for arson the trial court imposed is an upward departure under the applicable Sentencing Guidelines. The trial court laid out multiple aggravating factors for imposing

31

such a sentence, and therefore this sentence was not excessive, unreasonable, or not supported by the defendant's character.

At sentencing, defense counsel argued that the defendant has good character evidenced by the documents provided to the trial court regarding his reputation in the business community. In addition, defense council made the trial court aware that the defendant has the support of his family, and is a first time offender. N.T. 2/11/13 p. 16-18.

In requesting the trial court to impose an above the guidelines sentence, the Commonwealth pointed out that the defendant's Presentence Investigation Report shows that the defendant failed to accept any degree of responsibility for his crimes, compassion for the victims, or guilt for what he has done. The Commonwealth also pointed out that the defendant has a history of taking advantage of people. The Commonwealth did ask both Ms. House and Ms. Dingle if they would like to speak, but they indicated they were too emotional to adequately address the court. The court observed one of these women crying at the sentencing. *Id.* at p. 20-27.

The defendant's brother, Bryan Barosh, testified during the February 11, 2013 sentencing. During this testimony, Bryan Barosh stated that the defendant threatened to kill him for testifying, and that he and his family live in fear from the defendant. Bryan Barosh asked the trial court to give the

defendant the maximum sentence allowed. During this testimony, the trial court read a letter Bryan Barosh wrote to the court on November 19, 2012. This letter stated the defendant offered Bryan Barosh money not to testify and threatened to kill him if he did. *Id.* at p. 21-24. It is difficult to imagine a more significant aggravating factor than the defendant threatening to kill any witness if he testified against him. This defendant threatened to kill his own *brother*.

The trial court pointed out that defendant showed no remorse, nor did he accept any responsibility for his crimes; therefore indicating he is not remotely ready to be rehabilitated. In addition, the court pointed out the defendant does not care that he put people in danger, including several children, causing a fire which could have resulted in their deaths. Furthermore, the court noted the defendant's inappropriate and arrogant outburst during the pre-trial colloquy. While the trial court was patiently explaining to the defendant before trial the possible sentences he could face after trial, the defendant interrupted the judge, leaned forward menacing toward the court, clinched his fists, and snarled at the judge with a scornful and angry tone exclaiming, "Are you done yet?" The prosecutor commented on the trial court's restraint after this outburst. The trial court also noted the Presentence Report states the defendant was not forthcoming, and

33

also came across as arrogant during his interview; only providing vague details of his background to the pre-sentence investigator. Id. at p. 31-36.

At defendant's sentencing on February 11, 2013, the trial court was equipped with a current Presentence Report.[5] The Presentence Report stated the defendant denied any involvement or guilt regarding the arson. When asked about his brother, Bryan Barosh, the defendant stated "I don't want to discuss him. He doesn't exist to me." As stated above, the Presentence Report stated the defendant was not forthcoming to the investigator, came across as arrogant during his interview, and only provided vague details when questioned about his social/hereditary history. The defendant denied knowing contact information for his family members and told the investigator to contact his attorney for this personal information. When asked for his parents' positions or job titles, the defendant flippantly told

---

[5] See Commonwealth v. Devers, 519 Pa. 88, 101-102 (Pa. 1988) ("Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand").

34

the investigator he would have to ask them as he did not have their resumes handy. *See* Presentence Report, p. 2-3.

The trial court did not fail to provide a sufficient basis for imposing its sentence. Rather, the trial court thoroughly set out all of its reasons for the sentence at the original sentencing and at the hearing on the Motion to Reconsider Sentence, all of which warrant a sentence beyond the guidelines. N.T. 2/11/13, p. 31-36; 3/15/13, p. 13-21. In imposing this sentence, the trial court considered all factors regarding the defendant's character. This includes defense counsel's reference to the defendant's good character in the business community, as well as the numerous references to the defendant's bad character previously mentioned. Therefore, based on all of the aforementioned aggravating factors, the trial court's sentence is not excessive, unreasonable, or unsupported by the defendant's character. *See* 18 PA. CONS. STAT. §3301, *Comment* (indicating some cases warrant an increased sentence up to 20 years incarceration for arson endangering persons).

Lastly, there was no abuse of discretion where the trial court imposed a sentence that took into consideration the protection of the public, the circumstances of the offense (placing other individual's lives in danger, including children), and the defendant's lack of rehabilitation potential (defendant shows no remorse and accepts no responsibility for

35

his actions). See 42 PA. CONS. STAT. §9721.[6] Moreover, an upward departure in the guidelines is amply justified by the horrible impact his arson had on the victims, all of whom were citizens of modest means.

J. Defendant's tenth claim is: "The defendant is entitled to a remand for resentencing since the trial court's imposition of restitution is excessive and not supported by the evidentiary record. There was an insufficient basis to impose a restitution order. Moreover, any restitution may have been discharged during Florida bankruptcy proceedings. The trial court failed to make any inquiry with regard to the defendant's financial ability to make restitutions (citations omitted)."

The defendant is not entitled to a remand for resentencing as the trial court's imposition of restitution was not excessive and is supported by the evidentiary record.

The defendant was ordered to pay restitution as follows: $5,000 civil penalty payable to the insurance fraud prevention trust fund; $9,500 payable to Yolanda Dingle; $10,000 payable to

[6] Under 42 PA. CONS. STAT. §9721(b) General standards - "In selecting from the alternatives set forth in subsection (a), the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. …". See Com. v. Dykes, 373 Pa. Super. 258, 268(1988)("It is well established that sentencing is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. In fact, '(i)n order to be considered an abuse of discretion, a sentence must exceed the statutory limits or be manifestly excessive.'…Appellant was sentenced to serve ten to twenty years for arson (endangering persons)…Since appellant was sentenced within the statutory maximum, we find no abuse of discretion."); Commonwealth v. Crump, 995 A.2d 1280, 1283 (Pa. Super. Ct. 2010)("the record as a whole reflects that the trial court considered the facts of the crime and character of (a)ppellant in making its determination, [and appellate court] cannot re-weigh the sentencing factors to achieve a different result")

Doris House; and $92,408.68 payable to Allstate Insurance, N.T. 2/11/13 p. 38. The $5,000 civil penalty is supported by statute,[7] and the amounts payable to Ms. Dingle, Ms. House and Allstate are all supported by the evidentiary record. Both Ms. Dingle and Ms. House submitted extensive lists of property destroyed in the fire, and Allstate provided a detailed schedule of expenses totaling the $92,408.68.[8] The property contained on these lists and the schedule provided by Allstate is sufficient for the trial court to impose a restitution order. See 18 PA. CONS. STAT. §1106 ("Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.").

In addition, the defendant's financial ability to pay restitution is irrelevant as the court is not required to inquire into the defendant's financial ability to make

---

[7] 18 PA. CONS. STAT. §4117 ("If a person is found by court of competent jurisdiction, pursuant to a claim initiated by a prosecuting authority, to have violated any provision of this section, the person shall be subject to civil penalties of not more than $5,000 for the first violation.")

[8] On February 18, 2013, the defendant filed a Post Trial Motion to Modify Sentence, which includes Ms. Dingle and Ms. House's lists of destroyed property ("Exhibit C") and Allstate's schedule of expenses ("Exhibit D").

restitution. *Com. v. Shotwell*, 717 A.2d 1039, 1045 (Pa. Super. Ct. 1998)(*citing* 18 PA. CONS. STAT. §1106(c))("Whenever restitution has been ordered pursuant to Section 1106, the court is required under the statute to order full restitution regardless of the current financial resources of the offender.").

Furthermore, restitution was not discharged as a result of any bankruptcy proceedings involving the defendant. *Commonwealth v. Shotwell* is clearly on point regarding this issue and specifically states an order for restitution arising out of a criminal conviction is not discharged by any prior or subsequent bankruptcy discharge. *Com. v. Shotwell*, 717 A.2d 1039, 1045-46 (Pa. Super. Ct. 1998). Therefore, the defendant is not entitled to a remand for resentencing regarding the trial court's imposition of restitution.

## Conclusion

For all of the above reasons, the claims defendant raises on appeal should provide no relief. The defendant should not receive an arrest of judgment, new trial, or a remand for resentencing.


BY THE COURT:

CHRIS R. WOGAN, J.

prevention trust fund; $9,500 payable to Yolanda Dingle; $10,000 payable to Doris House; and $92,408.68 payable to Allstate Insurance Company.

On February 18, 2013, Mr. Kravitz filed a motion to reconsider the defendant's sentence on CP-51-CR-0008461-2010. On February 28, 2013, this court issued an order granting a hearing on the defendant's motion. On March 15, 2013, this court held that hearing, after which this court denied defendant's request to reconsider his sentences.

On April 2, 2013, the defendant, represented by Janis Smarro, Esquire, filed a Notice of Appeal. On April 11, 2013, this court ordered defendant to file a 1925(b) Statement of Matters Complained of on Appeal. The Superior Court docket sheets note that the court received the Docketing Statement on April 18, 2013. On April 23, 2013, Ms. Smarro filed a Motion for Extension of Time to File a Concise Statement of Errors Complained of on Appeal, which this court granted on April 25, 2013.

On September 16, 2013, Ms. Smarro filed the defendant's 1925(b) Statement of Matters Complained of on Appeal, listing ten appellate issues. No relief is due.

Discussion

A. Defendant's first and second claims are:

- "1. The defendant is entitled to an arrest of judgment with respect to his convictions for arson and insurance fraud since the evidence is insufficient to sustain the verdicts of guilt as the Commonwealth failed to sustain its burden of proving the defendant's guilt beyond a reasonable doubt. The Commonwealth failed to prove the essential elements of the crimes charged beyond a reasonable doubt."

- "2. The defendant is entitled to a new trial since the verdicts of guilt as to arson and insurance fraud are against the weight of the evidence. The totality of the evidence presented at trial shows that the Commonwealth failed to prove the essential elements of the crimes charged beyond a reasonable doubt."

As support of these claims, the defendant states: "There was no motive for the defendant to have committed the crime and there was no evidence that he benefited or would benefit from destruction of the property in question. The Commonwealth's evidence failed to establish that the defendant started a fire on his property or the property of another, that the fire was the result of arson, that the defendant recklessly placed anyone in danger of death or bodily injury, that the defendant committed any act with the purpose of destroying or damaging an inhabited building or occupied structure, that the defendant presented an insurance claim, that the defendant assisted, solicited or conspired with another to prepare any statement intended to be presented to an insurer, that [the] defendant presented false, incomplete or misleading information concerning any fact or thing material to the claim or that the defendant acted knowingly with the intent to defraud. The Commonwealth's evidence in this regard was speculative, conjectural and inherently unreliable and did not sustain the Commonwealth's burden beyond a reasonable doubt (citations omitted)."

The evidence at trial was sufficient to convict the defendant of arson and insurance fraud, and the verdicts were not against the weight of evidence. Therefore, the defendant is not entitled to an arrest of judgment or a new trial.

Sufficiency of evidence law is as follows:

3

In reviewing a claim regarding the sufficiency of the evidence, an appellate court must determine whether the evidence was sufficient to allow the fact finder to find every element of the crimes charged beyond a reasonable doubt. In doing so, a reviewing court views all the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. Furthermore, in applying this standard, the Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence. When performing its review, an appellate court should evaluate the entire record and all evidence received is to be considered, whether or not the trial court's rulings thereon were correct. Additionally, we note that the trier of fact, while passing on the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence.

*Commonwealth v. Burton*, 2 A.3d 598, 601 (Pa. Super. Ct. 2010)(citations omitted).

The law states the standard of review applied to a weight of the evidence claim by the defendant is as follow:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" It has often been stated that 'a new trial should be awarded when the [fact-finder's] verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.'

*In re J.B.*, 2013 PA Super 109, 69 A.3d 268, 277 (Pa. Super. Ct. 2013)(citations omitted).

Under 18 PA. CONS. STAT. §3301(A)(1)(I), Arson endangering persons,

(a) Arson endangering persons.--

4

(1) A person commits a felony of the first degree if he intentionally starts a fire or causes an explosion...whether on his own property or on that of another, and if:

    (i) he thereby recklessly places another person in danger of death or bodily injury, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire;

Under 18 Pa. Cons. Stat. §4117(A)(3), Insurance Fraud,

(a) Offense defined.--A person commits an offense if the person does any of the following:

    (3) Knowingly and with the intent to defraud any insurer or self-insured, assists, abets, solicits or conspires with another to prepare or make any statement that is intended to be presented to any insurer or self-insured in connection with, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim, including information which documents or supports an amount claimed in excess of the actual loss sustained by the claimant.

On July 13, 2005, Dorothy Wilson, as grantor, transferred title in 1148 South 54th Street, Philadelphia, Pennsylvania, to Jill Wezorek, as grantee. The defendant, Christopher Barosh, as power of attorney for Ms. Wezorek, signed the deed for the property. Commonwealth Exhibit No. C-2. On September 9, 2005, Ms. Wezorek submitted a "Deluxe Plus Policy" insurance application with Allstate Insurance Company (hereinafter "Allstate") regarding 1148 South 54th Street. Commonwealth Exhibit No. C-2. Nancy Rosen, a claims investigator with Allstate, testified that the defendant mainly handled the application process for obtaining the insurance policy on 1148

5

South 54th Street, with occasional questions and details faxed to the property owner, Ms. Wezorek. N.T. 12/5/12, p. 12-16. The defendant testified that he was in a relationship with Ms. Wezorek and at one time they were engaged. *Id.* at p. 26, 67.

In order to obtain Allstate's Deluxe Plus Policy on 1148 South 54th Street, the property needed to be owner occupied. In addition, because the property was purchased in July 2005, the applicant needed to provide proof of insurance from July 2005 through September 2005 (the date of the application), or misrepresent that the property was purchased in September 2005. *Id.* at p. 12-24. The Allstate insurance application the defendant assisted with indicated the property was purchased in September 2005 and would be owner occupied. Commonwealth Exhibit No. C-1. Furthermore, the defendant testified that Ms. Wezorek's intentions when purchasing the property were to fix it up and rent or sell the property. N.T. 12/7/12, p. 26.

Yolanda Dingle testified that in August 2005 she moved into the property at 1148 South 54th Street with several of her family members, pursuant to an agreement whereby the defendant would renovate the property at 1148 South 54th Street so that Ms. Dingle could rent it. Ms. Dingle testified that she paid the defendant $2,000 for rent and renovations. Approximately a month after moving into the property, the defendant took Ms. Dingle's keys and had police remove her from the property. After this

6

occurrence. Ms. Dingle found a place to live around the corner from 1148 South 54th Street. At no point while Ms. Dingle was living in 1148 South 54th Street did the defendant live there. N.T. 12/5/12, p. 27-35, 48. The Defendant testified that other than himself, no one else was residing in the property between the time it was purchased and the night of the fire. N.T. 12/7/12, p. 35.

While processing the insurance policy Ms. Wezorek submitted for 1148 South 54th Street, Allstate determined the property was over 45 years old, which would not be appropriate for the Deluxe Plus Policy. Upon further investigation, Allstate determined the property was not owner occupied and was purchased in July of 2005 as opposed to September 2005. Thereupon Allstate voided the policy. On September 16, 2005, Allstate mailed a cancellation notice to Ms. Wezorek at 1148 South 54th Street, which stated the cancellation was to take effect on October 27, 2005. N.T. 12/5/12, p. 17-19; Commonwealth Exhibit No. C-3. The defendant testified that he received and read the letter. However, the defendant maintains that he thought the policy was already cancelled at the time he read the letter instead of taking effect on October 27, 2005. N.T. 12/7/12 p. 83-85. While the Deluxe Plus Policy was still active, up to $126,533 could have been paid out to Ms. Wezorek if 1148 South 54th Street burned down from a fire of natural causes. N.T. 12/5/12, p. 16-17.

7

On the night of October 25, 2005, Doris House was living at 1150 South 54th Street, which is located directly next door to 1148 South 54th Street. Living with Doris House and present the night of October 25 were her son Morris Williams, nephew Vincent House (approximately 11 years old), and two grand children (approximately 4 and 5 years old). In addition Doris House's niece, Madeline House, who required the use of a wheel chair, was living in the house and present the night of the October 25. Doris House testified that at approximately 11:00PM, the smoke alarm in her house went off and she noticed a lot of smoke coming from the wall her residence shared with 1148 South 54th Street. After waking the children and getting them to safety, Doris House contacted Ms. Dingle to inform her that 1148 South 54th Street was on fire. N.T. 12/5/12, p. 54-58.

Upon arriving at the scene of the fire, Ms. Dingle came into contact with Madeline House. Madeline House informed Ms Dingle that she saw the defendant come from the back of the house where the fire had started. In addition, Ms. Dingle and Doris House both testified that while the fire was being put out, they saw the defendant across the street in the window of Richard Wilson's residence, laughing with Mr. Wilson. Id. at p. 34-41, 59. Contrary to the above witnesses' testimony placing the defendant at the scene of the fire, the defendant testified he was watching a baseball game at a bar near the University of

8

Pennsylvania campus. However, the defendant was unable to testify as to what time he went to the bar, the name of the bar, who was playing in the baseball game, or what time he left the bar. In addition, the defendant failed to produce any witnesses to corroborate his whereabouts, nor did he produce Mr. Wilson to refute Ms. Dingle and Doris House's testimony identifying him at Mr. Wilson's residence as the fire was being extinguished. Furthermore, in support of the defendant's own whereabouts, he testified that he arrived upon the scene of the fire, and merely noted "[the building] was odd looking." The defendant did not call the police, the fire department or Ms. Wezorek. Instead, he went to a hotel to spend the night. The defendant could not remember the name of the hotel, and did not keep any receipts of his stay. N.T. 12/7/12, p. 40-44, 80-65.

Two expert witnesses, Lieutenant Bordes Ramseur and Louis Gahagan, investigated 1148 South 54th Street to determine the cause of the fire on October 25, 2005 and November 1, 2005, respectively. Both witnesses ultimately determined and testified that the fire was incendiary (intentionally started). N.T. 12/6/12, p. 3-25, 40-62.

The first expert witness, Lt. Ramseur, was a fire fighter for 9 years and an Assistant Fire Marshal with the Philadelphia Fire Department for 15 years. Counsel for the defendant stipulated to Lt. Ramseur's expertise in the area of determining

9

the cause and origin of fires. The second expert witness, Mr Gahagan, worked for a fire and explosion investigation company for over 25 years and was hired by Allstate to investigate the cause of the fire. Prior to holding this position he earned an associate's degree in Fire Science, had over 20 years of training in fire investigation, worked for the Philadelphia Fire Department for 17 years, and had previously been qualified as an expert to testify in arson cases in several states including Pennsylvania. The Court accepted Mr. Gahagan as an expert in the area of fire investigations. Both Lt. Rasmeur and Mr. Gahagan testified that it was their professional opinion that the fire began in the basement, and was incendiary; using an ignitable liquid to accelerate the fire. N.T. 12/6/12, p. 3-25, 40-62.

Lt. Rasmeur further testified that upon arriving at the scene of the fire, the Philadelphia Fire Department performed an inspection of 1148 South 54th Street and determined all doors and windows were locked prior to their arrival, which resulted in the fire department using force to enter the property. *Id.* at p. 10-11.

In addition, two witnesses testified that the defendant made references to committing the arson. Bryan Barosh, the defendant's brother, testified that he had an argument with the defendant regarding keys to the property where Bryan Barosh lived. During the argument, the defendant stated that he would

10

burn down the property like the house he burnt down in Philadelphia if Bryan Barosh did not give him these keys. Bryan Barosh further testified that the defendant stated during this argument that he would "take a wet 2 by 4 and jam it in a light socket until it sparked a flame...or use a flammable liquid or kerosene gas, whatever you use to remove paint or wallpaper from the house." In addition, Bryan Barosh testified that the defendant contacted him asking him not to testify. After Bryan Barosh told the defendant that he had to testify, the defendant replied that Bryan Barosh wouldn't make it to court. *Id.* at p. 71-73.

The second witness, David Tarmin, testified that the defendant specifically told him he burned down the property at 1148 South 54th Street for the insurance. In addition, the defendant offered to pay Mr. Tarmin $1,700.00 to testify that the defendant was with him at the office during the time of the fire. Furthermore, Mr. Tarmin testified that in his presence, the defendant offered to pay another individual, John Ricardi, for his testimony. *Id.* at p. 90-94.

Based on the above testimony and evidence, there was sufficient evidence for the jury to find the defendant guilty of arson and insurance fraud, and the verdicts were not against the weight of evidence. As stated above, the defendant assisted Ms. Wezorek with the Allstate insurance application, if not entirely

11

completing the process himself besides signing the application, which contained false information regarding it being owner occupied and a purchase date of September 2005. There was also sufficient evidence for the jury to find the defendant intended to defraud Allstate because, since but for the inclusion of the false information regarding owner occupancy and purchase date, the application would have been denied. Lastly, the jury could logically infer that an insurance claim was made with Allstate based on: the fire being started two days prior to the insurance policy lapse date; the defendant indicating he turned a receipt for a hotel the night of the fire and other materials over to the insurance agent; and testimony whereby the defendant told a witness he burned down the house in Philadelphia for the insurance.

In addition, the above testimony by two experts in the area of fire investigations indicates there was sufficient evidence for the jury to find that the fire was intentionally started using an ignitable liquid in the basement of the property to accelerate the fire. Furthermore, the testimony indicates there was sufficient evidence for the jury to find that the defendant started the fire based on the following: the defendant being identified leaving the property immediately before the fire was discovered and also being identified as being across the street while the fire was being extinguished, despite his testimony to

12

the contrary; the fire company indicating the property was fully secured and not broken into prior to their forcible entry into the property; and the defendant indicating no other individual besides himself was living in the property after Ms. Dingle was removed, implying only he had access to the property. In addition, two witnesses testified that the defendant made reference to committing the arson, one of whom was threatened by the defendant if he testified while the other was offered a bribe to falsely testify to the defendant's whereabouts the night of the fire. Moreover, the above testimony indicates there was sufficient evidence for the jury to find that the defendant recklessly placed another person in danger of death or bodily injury based on the following facts: the defendant set fire to a row home that was connected to another residence; at the time of the fire the adjoining residence was occupied by several individuals, including but not limited to a woman required to use a wheelchair and children ages 4 years old, 5 years old and 11 years old; the fire was started at approximately 11:00PM when several of the children in the adjoining residence were asleep; and the adjoining residence began filling with smoke from the fire next door requiring the occupants to evacuate.

Finally, there was sufficient evidence for the jury to find that the defendant started the fire at 1148 South 54th Street with the intention of damaging or destroying the property.

13

Burning down the property would result in Ms. Wezorek, the defendant's girlfriend and/or fiancé, being paid $126,553 by Allstate Insurance Company. The defendant's intention was to damage or destroy the property by fire and benefit from these actions by either directly receiving money from Ms. Wezorek's insurance payout, or indirectly through her enrichment. In addition, the timing of the insurance policy expiration date supports this motive as the property was set on fire by the defendant just two days prior to the insurance policy expiring, the expiration date which the defendant was aware of due to receiving and reading the cancellation letter.

Under these facts, the evidence was sufficient for the jury to convict the defendant of arson and insurance fraud, and the verdicts were not against the weight of the evidence. See Com. v. Ford, 607 A.2d 764, 766 (1992) (court finding "the evidence presented to the jury, i.e., appellant's motive, his presence near the scene when the fire was set, his presence at the scene shortly after the fire was set, appellant's apparent falsification of his whereabouts on the night of the fire, and the intimidation of the Commonwealth's witnesses, was sufficient to support appellant's conviction."); Jermyn v. Horn, CIV. A. J:CV-97-634, 1998 WL 754567 (M.D. Pa. Oct. 27, 1998) aff'd on other grounds, 266 F.3d 257 (3d Cir. 2001) ("Intent to endanger persons is not a necessary element of arson endangering persons;

14

the intentional setting of a fire must merely result in recklessly placing another in danger of death or bodily injury.").

B. Defendant's third claim is: "3. The defendant is entitled to a new trial as a result of the ruling of the pre-trial court dated March 9, 2012 that denied his motion to dismiss and/or sanction as a result of the destruction of evidence and the Commonwealth's failure to establish a chain of custody concerning certain relevant evidence. The destruction of evidence was in bad faith and precluded the defendant from sufficiently defending himself at trial. Moreover, the Commonwealth failed to sustain its burden with regard to the chain of custody as to evidence it presented at trial with regard to the cause and nature of the fire it claimed the defendant was responsibly for setting. The defendant renewed his objections to the destruction of evidence and the chain of custody during trial. As a result of the pre-trial court's and trial court's rulings, the defendant was denied a fair trial (citations omitted)."

The pre-trial hearing court, Judge Ramy Djerassi, admitted evidence regarding the cause and nature of the fire as the evidence was not destroyed in bad faith, and the Commonwealth met its burden with regard to chain of custody of the evidence. Therefore, the defendant is not entitled to a new trial. N.T. 3/9/12 pg. 3-4.

The evidence at issue are samples Mr. Gahagan, in his capacity as a Fire Investigator for Patrick McGinley Associates (hired by Allstate Insurance Company), took from the basement of 1148 South 54th Street, which were later determined in a forensic laboratory report to contain traces of gasoline. Commonwealth

15

Exhibit No. 6. The Commonwealth did not fail to sustain its burden with regard to the chain of custody of this evidence. Mr. Gahagan followed a standard protocol of taking the samples from the scene of the fire, sealing them, and shipping them to a laboratory in Atlanta via FedEx. Thereafter, the laboratory prepared a report on the samples and mailed the samples back to Mr. Gahagan. N.T. 12/6/12 p. 56-57.

Based on these facts, the pre-trial hearing court, Judge Ramy Djerassi, properly determined that the evidence was not tampered with to a reasonable degree of certainty, the chain of custody was not broken, and this determination should not be overturned absent a clear abuse of discretion. The court properly over-ruled the defendant's objection regarding the chain of custody as the defendant's argument goes to the weight of the evidence and not admissibility. *See United States v. Jones*, 404 F. Supp. 529, 542 (E.D. Pa. 1975) *aff'd*, 538 F.2d 321 (3d Cir. 1976) ("The government must eliminate possibilities of misidentification and adulteration, not absolutely, but as a matter of reasonable certainty."); *United States v. Clark*, 425 F.2d 827, 833 (3d Cir. 1970) ("A trial judge's determination that the showing as to identification and nature of contents is sufficient to warrant reception in evidence of the results of a test on the article may not be overturned except for a clear abuse of discretion. We find no such abuse of discretion here.

While it is true that an object connected with a crime must be shown to be in substantially the same condition as when the crime was committed before it can be admitted, the [defendant's chain of custody objections regarding drugs later analyzed by a police chemist] go to the weight of the evidence rather than to its admissibility and, hence, the question was properly left to the jury.").

In addition, the samples were not destroyed in bad faith, and therefore the defendant was not denied a fair trial. After Mr. Gahagan received the samples back from the laboratory in Atlanta, he placed them in an evidence locker. He then stated that his employer maintains the evidence until the file is closed, which occurs when the file is inactive for a couple of years. Regarding the evidence at issue, it was destroyed in October 2007 after Allstate called Patrick McGinley Associates and informed them the file was closed. Mr. Gahagan further stated that the evidence would not have been destroyed if his employer was aware of an ongoing criminal investigation, and that he was not aware of such an investigation. N.T. 12/6/12 p. 56-58.

Based on these facts, the evidence consisting of the samples Mr. Gahagan took from the basement of 1148 South 54th Street was destroyed in accordance with standard company procedure and not in bad faith. Furthermore, the defendant has

not presented any evidence to the contrary, which would indicate that the evidence was destroyed in bad faith. Rather, the defendant makes an unsupported conclusion that the evidence was destroyed in bad faith. Therefore, because the evidence was not destroyed in bad faith, the defendant was not denied a fair trial. See *Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004)(stating that when dealing with "'evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant...the failure to preserve this 'potentially useful evidence' does not violate due process 'unless a criminal defendant can show bad faith'(citation omitted)"); *Com. v. Snyder*, 963 A.2d 396, 404 (2009)("The trial court found the Commonwealth did not act in bad faith, and we are bound by that finding if supported by the record...(w)hile it is very unlikely [the court] could find bad faith where samples are destroyed pursuant to standard procedure, evidence destroyed outside a standard procedure is not ipso facto destroyed in bad faith (citation omitted).").

C. Defendant's fourth claim is: "The defendant is entitled to a new trial as a result of the ruling of the trial court that allowed the Commonwealth to present testimony showing that the defendant was involved in a "scam" of Commonwealth witness Yolanda Dingle. (N.T. 12/5/12 p. 27, 44). The defendant was not charged with any "scam" and such testimony was inappropriate and prejudicial, denying the defendant a fair trial."